**John Lewis SULLIVAN, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53324.**

Court of Criminal Appeals of Texas, En Banc.

May 25, 1977.

On State's Motion for Rehearing April 12, 1978.

Rehearing Denied May 10, 1978.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and Mike Keasler, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for murder. Appellant's punishment was assessed at seventy-five years' imprisonment.

Appellant contends that the trial court erred in overruling his motion to suppress and admitting the murder weapon, a twelve gauge shotgun, into evidence at trial. He relies on the Fourth Amendment to the United States Constitution; Article 1, Section 9 of the Texas Constitution, and Article 38.23, V.A.C.C.P.

After the jury was selected, and before the reading of the indictment to the jury, the court heard evidence on appellant's motion to suppress the murder weapon on grounds that it was obtained by an unlawful, warrantless search and seizure. The only witness to testify was the officer who conducted the search of a 1972 Cadillac and found the weapon in the trunk. After this testimony, which consists of less than nine pages in the record, defense counsel argued the evidence did not show consent, that no warrant was obtained and no exigent circumstances existed, and that appellant's interest in the automobile was based on the fact that he had a key to the ignition on his key ring obtained prior to the search. The State made no argument in the trial court and the court overruled the motion to suppress. This preserved the issue for review. Art. 40.09(6)(d)(3), V.A.C.C.P.

Officer N. D. Emberlin testified at the hearing held on the motion to suppress. He stated that he investigated the murder of the deceased and that appellant was a suspect. Emberlin obtained the keys taken from the appellant and went to the South Dallas Auto Pound on Choice Street.[1] Emberlin, accompanied by Officer R. C. Wagner, discovered that one of the keys on the ring fit the ignition and the doors of the Cadillac. The key, however, did not open the trunk nor would it open the glove box of the car. The murder weapon was found in the trunk.

No warrant was obtained by Emberlin prior to his search of the car and seizure of the shotgun. The State, however, contends that the search was valid because the owner of the car consented to Emberlin's action and because appellant has no standing to challenge the search.

At the hearing held on the motion to suppress, Emberlin stated that he ascertained the registered owner's name was Roosevelt Allen, and attempted to contact him through a long distance phone call to Houston. Allen's mother answered the phone and informed the officer that Allen was out. Subsequent to this, Allen called Emberlin. The State's consent to search theory rests on the following testimony about that telephone conversation elicited from Emberlin:

"Q. All right. What did Mr. Allen say to you? Just recite the conversation as best you remember it, Mr. Emberlin.

---

1. The record does not reflect whether this "pound" was a police impound area, a lot belonging to the City of Dallas, or a private auto pound.

"A. Well, first he wanted to know where the car was and I told him and I told him there was something that might be connected with the car that I needed to know and he asked me when I got through with it if his wife could have it back.

"Q. All right.

"A. And I said she could.

"Q. All right. When you got through with it, could his wife have it back?

"A. Yes."

On the basis of the evidence presented on the motion to suppress we cannot conclude that the officer had the consent or permission of the owner to search the vehicle. The State has not met its burden of showing that it was given consent to search the vehicle. See, *Swift v. State,* Tex.Cr.App., 509 S.W.2d 586; *Morrison v. State,* Tex.Cr. App., 508 S.W.2d 827.

On appeal the State also maintains that the appellant does not have standing[2] to challenge the search.

In *Maldonado v. State,* Tex.Cr.App., 528 S.W.2d 234, at 238, the Court stated:

"Appellant's standing was never contested in the proceedings below. The State raises the issue for the first time in its brief upon appeal. The State should not be heard to complain of an incomplete record when its failure to dispute appellant's standing is responsible for the deficiency."

At the hearing on the motion to suppress, the State presented evidence on the merits of the legality of the search without contesting appellant's standing to raise the issue. Thus, the State has waived the issue. Appellant was not put on notice that such a claim would be made, and thus was not required to present evidence on the issue of standing.

**2.** We also observe that the State's challenge to appellant's standing for lack of connection with the vehicle is in conflict with its position on appellant's challenge to the sufficiency of the evidence in another ground of error. On that issue the State places major emphasis on appellant's connection with the vehicle in which the murder weapon was found. The State may not take "advantage of contradictory positions." *Jones v. United States,* 362 U.S. 257, at 263, 80 S.Ct. 725, 4 L.Ed.2d 697; *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208.

We therefore conclude that neither of the theories urged by the State to support the trial court's ruling on the motion to suppress has merit. The search was without a warrant and does not appear from the record to have been within any of the exceptions to the warrant requirement. The search and seizure being in violation of the State and Federal constitutional protections relied on by appellant, the motion to suppress should have been granted.

The judgment is reversed and the cause remanded.

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

The State, with leave of this court, has filed a motion for rehearing in which the State argues that this court erred in holding that the trial court should have granted appellant's motion to suppress. We agree with the State's contention.

The uncontroverted evidence in the record before us reveals that appellant, some fourteen hours after the murder of L. C. Reagor, was observed by a policeman standing about four feet in front of a parked brown Cadillac. The policeman recognized the appellant and sought to arrest him on a warrant issued following bond forfeiture proceedings in a misdemeanor case and did so while appellant was some distance from the Cadillac. He gave the officer a false name, which the officer knew was not true. Although appellant had a key ring with several keys on his person when arrested, he denied any contact or connection with the brown Cadillac and said that it was not his car. Appellant was taken to the station and his keys were placed with his personal property in the property room of the Central Station. The brown Cadillac was sub-

sequently towed to the South Dallas Auto Pound.

Officer Emberlin, who was investigating the murder, learned that appellant was arrested near a car that had been impounded and ascertained that the owner of the Cadillac was Roosevelt Allen. Officer Emberlin attempted to get in touch with Allen and talked to Allen's mother in Houston, who stated that he was out but that she would have Allen get in touch with the officer when she heard from him. Later than evening, a man who identified himself as Roosevelt Allen called Officer Emberlin and implicitly gave his consent for the car to be searched and asked if his wife could have the car back after the police were through with it. After Officer Emberlin assured Allen that his wife could have the car back, he went to the property room, took appellant's keys and proceeded to the auto pound. It was found that one of the keys on appellant's key ring would work in the doors and ignition of the Cadillac, but not in the glove box or the trunk. However, the glove box was pried open (it appeared to have been pried open before), a lever was operated therein which opened the trunk, and the murder weapon, a sawed-off shotgun, was found in the trunk.

▪ We find appellant's contention that the trial court erred in overruling his motion to suppress to be without merit. It does not appear that the appellant had standing to complain of the search under the facts of this case. As this court stated in *Hensley v. State,* 494 S.W.2d 816 (Tex.Cr. App.1973), " . . . where, as here, the appellant disclaims ownership of an automobile he forfeits his standing to contest the search thereof."

Further, in *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973) (en banc), the search of briefcases containing sawed-off shotguns was upheld because the defendants placed them on the sidewalk, walked away from them and then denied to the police ownership of the briefcases. There the court wrote:

"Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan,* 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning,* 5th Cir. 1971, 440 F.2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. *See Abel v. United States, supra* [362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668]; *United States v. Edwards,* 5th Cir. 1971, 441 F.2d 749; *Lurie v. Oberhauser,* 9th Cir. 1970, 431 F.2d 330. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Edwards, supra,* 441 F.2d at 753; *cf. Katz v. United States,* 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576."

The defendants in *Colbert* argued that *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), precluded a holding that they lacked standing to challenge the search in the prosecution for possession of the sawed-off shotguns. The Court disagreed and wrote:

" . . . The rule established in *Jones* is based on the positions the prosecution takes at trial when the duration of the possession charged includes the time of the search. In the above quoted passage the Court focused on the defendant's possession of the narcotics 'at the time of the search.' When the time of the possession charged and the time of the search coincide or overlap, it is indeed inconsistent for the government to argue the defendant lacked sufficient possession to confer standing to challenge the search but had sufficient possession at the same time for conviction. When, however, the government shows that the property was abandoned before the search, there is no such inconsistency. On the contrary, the

government may argue without self-contradiction that a defendant had possession at one time for purposes of conviction, but at a later time lacked sufficient possession to confer standing to object to search and seizure. Accordingly, we do not think the *Jones* rule of standing was intended to prevent the government from showing voluntary pre-search abandonment, if it can, or to apply to a possession prosecution when such abandonment is shown. In *United States v. Edwards,* 5th Cir. 1971, 441 F.2d 749, a panel of this court, in holding a defendant lacked standing to challenge a search and seizure in a possession prosecution because of voluntary pre-search abandonment, did not consider Jones to be an obstacle, and we hold today that *Jones* is not an obstacle to such a ruling."

In a later case, *United States v. Anderson,* 500 F.2d 1311 (5th Cir. 1974), the Court wrote:

"The warrantless search of Spicer's and Felts' luggage, occurring after their arrests, presents a more difficult problem. However, the gun which serves as the basis of the third count of the indictment, as well as almost all of the incriminating material found in Spicer's and Felts' possession, was taken from the piece of luggage which neither Spicer nor Felts would claim.

"Our conclusion as to the materials taken from that suitcase would appear to be directly controlled by *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973) (en banc). In *Colbert,* the two defendants, one of whom fit the description of a wanted suspect, were seen carrying briefcases by policemen. As the officers approached the defendants to question them, the defendants set their briefcases on the sidewalk. They subsequently denied that they owned the briefcases or had any knowledge of them, and began to walk away leaving the briefcases on the sidewalk. The officers arrested the defendants for failure to carry a Selective Service registration certificate, and placed them in the patrol car. The officers then opened the briefcases, finding sawed-off shotguns. The defendants were later convicted of possession of unregistered sawed-off shotguns. The Fifth Circuit affirmed the convictions holding the weapons properly admitted into evidence because the defendants abandoned the briefcases.

"Here, as in *Colbert,* the defendants abandoned the luggage before the search took place. As in *Colbert,* the defendants here, in response to questions from authorities, disclaimed any knowledge of the bag. Finally, in neither case did the officers compel the defendants' actions. Hence, in accordance with the result in *Colbert,* we find that Spicer and Felts could have entertained no reasonable expectation of privacy in the unclaimed suitcase. They therefore lack standing to challenge the search of the unclaimed bag. *See Lurie v. Oberhauser,* 431 F.2d 330 (9th Cir. 1970)."

More recently, the Maryland Court of Appeals upheld a search on the abandonment doctrine, citing with approval *United States v. Colbert,* supra. See *Duncan v. State,* 37 Md.App. 330, 377 A.2d 567 (1977). In that case, two black men were seen taking bags of clothing out of a J. C. Penney's store and putting them in trash cans. A security officer kept his eye on the cans and saw two black men drive up to them in a white Mercury. They sped away, however, when they saw they were being watched. Shortly thereafter, a nearby resident saw a white Mercury drive off the street and park on her lawn. Two black men got out and walked away. The resident called the police, the men were arrested several hundred yards away, and' the resident identified the men as the occupants of the Mercury. A search of the car produced goods stolen from a Montgomery Ward's store in the same shopping mall as the Penney's store.

The court held that the defendants, *by denying that the car was theirs when asked about it by the police,* lost their reasonable expectation of privacy in the car; that the abandonment doctrine came into play; and that they had no Fourth Amendment protection against the search.

In the instant case although possession of the shotgun was an integral part of the circumstantial evidence against the appellant, possession of the shotgun was not an essential element of the offense with which appellant was charged. This was not a possession prosecution, but a murder prosecution. Cf. *Jones v. United States,* supra.

Speaking to the issue of standing, the United States Supreme Court in *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973), wrote:

" . . . there is no standing to contest a search and seizure where . . . the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. . ."

See also *Hutchinson v. State,* 509 S.W.2d 598, 600 (Tex.Cr.App.1974).

In *Wing v. Anderson,* 398 F.Supp. 197 (E.D.Okl.1973), the petitioner was convicted for the offense of robbery by firearms. The petitioner admitted he was not present when the car was searched and specifically disavowed any proprietary or possessory interest therein. As the offense charged did not include "possession" of seized evidence, the court held, citing *Brown v. United States,* supra, that the petitioner had no standing to contest the lawfulness of the search and seizure.

■ In the instant case under the circumstances presented the appellant could have entertained no reasonable expectation of privacy in the unclaimed automobile. He, therefore, lacked standing to challenge the search of the said automobile. Further, under the circumstances the State did not take contradictory positions in claiming the lack of the appellant's standing to challenge the search and its position on appellant's attack on the sufficiency of the evidence. See *United States v. Colbert,* supra.

■ On original submission we held, citing *Maldonado v. State,* 528 S.W.2d 234, 238 (Tex.Cr.App.1975), that since the State did not raise the issue of appellant's standing to challenge the search in the trial court it waived the issue and such issue could not be raised for the first time on appeal. *Maldonado* is the only case we have found so holding, and it cites no authority or precedent for its holding. It is clearly wrong. To hold that a search and seizure is illegal even though the record before this court and the evidence before the trial judge shows the defendant had no standing to challenge the search simply because the prosecutor did not verbalize the issue would be to reach an absurd result.

In *Jones v. United States,* supra, it was stated:

"[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the *allegation be disputed* that he establish, that he himself was the victim of an invasion of privacy." See also *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Clemons v. State,* 501 S.W.2d 92, 93 (Tex.Cr.App. 1973).

■ The State does not have the burden of listing or verbalizing in the trial court every possible basis for holding a search legal or else waive that basis for urging on appeal the validity of the search. Insofar as *Maldonado* is in conflict with the holding today, it is overruled.[1]

■ Appellant also argues that the court committed reversible error in admitting the murder weapon into evidence because it was the fruit of an illegal search and seizure of appellant's keys taken from his personal property in the Dallas police department. Appellant does not point out in his brief, nor do we find in the record, anything

---

1. There was another basis for the holding in *Maldonado* other than the one which is in conflict with the holding in the instant case.

to indicate that appellant objected when the keys were offered into evidence or during the testimony concerning the obtaining and use of the keys. Any error committed is thus waived. *Ashford v. State,* 502 S.W.2d 27 (Tex.Cr.App.1973); *Mortier v. State,* 498 S.W.2d 944 (Tex.Cr.App.1973); *Northcutt v. State,* 478 S.W.2d 935 (Tex.Cr.App.1972).

■ Appellant next contends that the evidence is insufficient to support a conviction for murder. He argues that the evidence, all of which is circumstantial, shows only that appellant recently "possessed" the murder weapon, was found with it fourteen hours after the murder, and had made a threat against the deceased several years prior to the murder. We do not agree that the evidence is as insignificant as appellant contends.

Without going into great detail, the record reflects that appellant was the stepson of the deceased who, at the time of his death, was married to appellant's mother. The deceased had at one time broken his wife's jaw in a fight and the physical abuse continued until the evening preceding his death. On the occasion when his mother's jaw was broken, appellant came to kill his stepfather but did not do so because of something his mother told him according to his stepbrother when they were discussing why their half sister ran away from home because of fear of a whipping. On the evening preceding his death, deceased was in a bedroom by himself, his wife and teenage daughter were in another bedroom, and his young son was in another bedroom. Appellant called his mother on the telephone that evening about midnight and was told of the current difficulties that his mother and stepfather were having. His mother told appellant that she "didn't care what he did to him (the deceased)" and that the door would be open. After the telephone conversation, deceased's teenage daughter protested to her mother that what she was doing was wrong, went to her father's room and saw him awake in bed with a pistol ("I took it from that that he knew what was going on"), and went to her room and hid in the closet for about thirty minutes because she was scared. Thereafter, shortly after five o'clock the next morning, shots were heard and Reagor was found dead in his room. He had been shot four or five times with a shotgun and there were four spent shotgun shells found in the room. A thirteen year old witness testified that at about five o'clock on the morning of the shooting, before the squad cars arrived, he had seen a large car parked on the street near his home in the vicinity of the murder.

As previously noted, appellant was arrested about fourteen hours after the murder and it was later found that he had in his possession the keys to the brown Cadillac in which the murder weapon was found (although he denied any connection with the car when he was arrested). Appellant gave a false name to the arresting officer and also attempted to give his key ring to a companion at the scene of the arrest. The arresting officer testified that appellant was normally quiet and polite when arrested, but was uncharacteristically visibly upset when he was unable to give the keys to his companion.

It was positively determined that the shotgun found in the trunk of the brown Cadillac fired the four spent shells found in the deceased's bedroom. That shotgun, which had a distinctively colored stock and forearm, was seen by witnesses in appellant's possession in his house on two occasions prior to the killing.

■ It is well established that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt and proof amounting only to a strong suspicion is insufficient. *Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977); *Moore v. State,* 532 S.W.2d 333 (Tex.Cr. App.1976); *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App.1973). However, it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Flores v. State,* supra; *Herndon v. State,* 543 S.W.2d 109 (Tex.Cr.App.1976). It is not required

that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Flores v. State*, supra; *Jones v. State*, 442 S.W.2d 698 (Tex.Cr.App.1969). Each case must be tested by its own facts. *Flores v. State*, supra; *Moore v. State*, supra; *Indo v. State*, supra.

We find that the evidence here does exclude to a moral certainty every other reasonable hypothesis except appellant's guilt and thus overrule this ground of error.

Appellant next complains that the prosecutor committed reversible error in his argument to the jury during the punishment hearing when he invited the jury to apply the parole law in assessing punishment. The record reflects that the following colloquy occurred:

"MR. KEASLER (Prosecutor): . . The fourth reason is to get this man, this man here (indicating) off the streets for as long as it takes to serve a sentence of life. Just get him off the streets.

"MR. CAMPBELL (Defense Counsel): Your Honor, I object to any reference as to how long it takes to serve a sentence of life as being improper.

"THE COURT: I will sustain it in as far as how long it takes to serve life or any other sentence the jury may decide to impose. The length of the sentence is within the exclusive jurisdiction of the jury. How long it takes to serve it, as the charge so states, comes within the purview of the Board of Pardons and Paroles and the Governor and cannot be considered by the jury and hence cannot be argued by counsel."

Any error committed was cured when the trial judge sustained the objection and gave a proper explanation to the jury. Appellant thus received all the relief he sought and all that he was entitled to. *Stokes v. State*, 506 S.W.2d 860 (Tex.Cr.App.1974); *Magee v. State*, 504 S.W.2d 849 (Tex.Cr. App.1974).

The State's motion for rehearing is granted, the judgment of reversal is set aside and the judgment is affirmed.

VOLLERS, J., not participating.

ODOM, Judge, dissenting.

I dissent to the majority's decision to overrule *Maldonado v. State*, Tex.Cr.App., 528 S.W.2d 234. The majority opinion erroneously asserts that *Maldonado* gave no reason or authority for requiring the State to challenge in the trial court the defendant's standing to contest a search and seizure. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), in the very same passage quoted by the majority, states the reason and stands as authority for the holding of *Maldonado*:

"[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and *if the allegation be disputed* that he establish, that he himself was the victim of an invasion of privacy."

As was stated in *Maldonado*, the State should not be allowed to contest the defendant's standing for the first time on appeal because this deprives the defendant of the opportunity to present evidence showing standing. If the State had raised the issue at trial, appellant in this case would have had an opportunity to present evidence on the issue. The majority deny him that opportunity and in doing so deprive him of due process of law.

I respectfully dissent.

ROBERTS and PHILLIPS, JJ., join.