Gonzalez v. State 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-427-CR





VICTORIANO GONZALEZ,




 APPELLANT



vs.





THE STATE OF TEXAS,



 APPELLEE 





 




FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT



NO. CR93-32, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING



 





 Victoriano Gonzalez, appellant, was convicted by a jury of aggravated possession
of marihuana. Controlled Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.121(d)(1), 1989
Tex. Gen. Laws 2230, 2939 (Tex. Health & Safety Code Ann. § 481.121(d)(1), since amended). 
The court assessed punishment at twenty years' imprisonment. In three points of error, appellant
contends the trial court erred in admitting evidence obtained through an illegal search and seizure
in violation of the United States and Texas Constitutions and the Texas Code of Criminal
Procedure. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann.
art. 38.23 (West Supp. 1995). We will affirm.



BACKGROUND


 On December 8, 1992, the Alamo Area Narcotics Task Force ("Task Force") (1)
established a narcotics checkpoint under the Kohlenburg overpass on Interstate 35 in Comal
County. Approximately one-half mile before the checkpoint, the Task Force placed a large
flashing sign in the median that alternately displayed: "Narcotics Checkpoint Ahead," "Drive
Safely," and "Thank You." In between the sign and the actual checkpoint was the Kohlenburg
exit from I-35. 

 Twenty-five officers from various law enforcement agencies were involved in the
checkpoint. Task Force officer Kenneth Schmidt was a "spotter." Positioned between the sign
and the checkpoint, his task was to observe vehicles to see if they committed traffic offenses or
crossed the median after they saw the sign. Schmidt testified that, while working as a spotter, he
saw a white Chevy Blazer pull onto the right shoulder without signalling. The vehicle continued
to drive on the shoulder, then returned to the highway, again without signalling. As the Blazer
approached the Kohlenburg exit, Schmidt saw it break hard and make a sudden sharp right turn
to exit the highway, again without signalling. Because of these maneuvers, the Blazer never
reached the checkpoint. Based on these observations, Schmidt notified other officers that the
driver had committed several traffic violations and instructed them to stop the Blazer for these
violations.

 Officer Darrell Sanders was positioned to intercept vehicles that made a U-turn to
evade the checkpoint. After Sanders received the radioed information, he saw the Blazer with a
police car already behind it; Sanders joined in the pursuit. The Blazer led the officers on a five-mile high-speed chase, at times traveling in excess of eighty miles per hour. In all, at least five
police cars were involved in the chase. Sanders testified that in addition to the traffic violations
Officer Schmidt had observed, the driver of the Blazer committed several additional offenses,
including evading arrest, attempting to elude a peace officer, and speeding. 

 Eventually the Blazer stopped. Appellant was placed under arrest for evading
arrest and attempting to elude a police officer. Officer Sanders approached the vehicle to conduct
what he described as an "inventory search." (2) When Officer Sanders opened the vehicle's door,
he immediately noticed an "overwhelming smell" of marihuana. This strong odor emanated from
ninety-one pounds of marihuana concealed in duffle bags in the rear of the vehicle. Appellant was
arrested, charged, and indicted for aggravated possession of marihuana.

 Appellant's contention at trial and now on appeal is that the marihuana seized from
his Blazer was the product of an illegal search. The thrust of his argument is that the narcotics
checkpoint was illegal under the United States Supreme Court's pronouncement in Michigan
Department of State Police v. Sitz, 496 U.S. 444 (1990), and the recent Texas Court of Criminal
Appeals decision in State v. Holt, No. 599-93 (Tex. Crim. App. June 15, 1994), because the
checkpoint was not operated according to a legislatively authorized administrative scheme. 
Appellant contends that the marihuana would not have been seized "but for" the illegal narcotics
checkpoint and, therefore, must be excluded under the U.S and Texas Constitutions and article
38.23 of the Texas Code of Criminal Procedure.


DISCUSSION


 Despite appellant's contention, this is not a checkpoint case. Had appellant
proceeded to the checkpoint and been one of the cars searched there, presumably the analysis in
Sitz as applied by the Court of Criminal Appeals in Holt would apply. (3) However, the legality of
the checkpoint is not at issue because the evidence was not seized by virtue of having gone
through the checkpoint. (4) 

 This situation is nearly identical to Johnson v. State, 833 S.W.2d 320 (Tex.
App.Fort Worth 1992, pet. ref'd). Johnson involved the use of a spotter in conjunction with a
DWI task force roadblock. 833 S.W.2d at 321. The spotter's job was to watch for cars
attempting to avoid the roadblock. The spotter saw Johnson approach the roadblock and make
a left turn on a street before the roadblock while accelerating at a high rate of speed. Id. The
officer followed Johnson and observed him commit several additional traffic violations. Id. 
Johnson was eventually stopped and arrested for DWI. On appeal, Johnson contested the legality
of the stop because "but for the illegal roadblock" he would not have been followed. Id. The
Fort Worth Court of Appeals rejected this argument because Johnson was not arrested by virtue
of having gone through the roadblock. Id. Rather, the court framed the issue as whether
Johnson's stop was legal based on the officer's reasonable suspicion and probable cause. Id. The
same is true in the present case.

 The Fourth Amendment protects citizens from unreasonable searches and seizures. 
U.S. Const. amend. IV. However, it is consistent with the Fourth Amendment for an officer to
stop a vehicle and detain the driver when the officer observes traffic violations. Garcia v. State,
827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Failure to signal a lane change is, by itself,
sufficient probable cause for arrest. Beck v. State, 547 S.W.2d 266, 267 (Tex. Crim. App. 1976);
Owens v. State, 861 S.W.2d 419, 420-21 (Tex. App.Dallas 1993, no pet.). Further, an officer
may arrest an offender without a warrant for any offense committed in his presence or within his
view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 1977); see also Tex. Rev. Civ. Stat. Ann.
art. 6701d, § 153 (West 1977) (authorizing arrest of persons violating traffic regulations). Where
there has been cooperation between officers, the cumulative information known to the officers at
the time of the stop is considered in determining whether the stop was reasonable. Hoag v. State,
728 S.W.2d 375, 380 (Tex. Crim. App. 1987). Once a valid custodial arrest of an occupant of
a vehicle is made, the officer may conduct a "search incident to arrest" of the passenger
compartment, including all containers. New York v. Belton, 453 U.S. 454, 460-61 (1981).

 Applying these principles, the search that uncovered the ninety-one pounds of
marihuana in appellant's Blazer was consistent with the Fourth Amendment. When Officer
Schmidt observed appellant commit several traffic violations, (5) he was entitled to stop appellant
and detain him for those offenses. In an attempt to do so, Schmidt enlisted the help of fellow
officers, including Sanders. When Sanders observed appellant commit additional offenses,
including evading arrest, (6) attempting to elude a police officer, (7) and speeding, (8) he had probable
cause to arrest appellant for those offenses as well. Incident to this valid arrest, the officers were
entitled to search the vehicle and all containers. During this valid search, they uncovered the
marihuana. Under these circumstances, no Fourth Amendment violation occurred. Point of error
one is overruled.

 Appellant also raises points of error under article I, section 9 of the Texas
Constitution and the Texas statutory exclusionary rule. These arguments, however, address the
legality of the checkpoint. Because we conclude that the legality of the checkpoint is irrelevant
to the search of appellant's vehicle, we overrule these points of error.




CONCLUSION


 The search of appellant's car was consistent with the constitutional protection of
the Fourth Amendment. We affirm the conviction.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: January 18, 1995

Do Not Publish
1.   The Task Force is a federally funded unit, with locally matched funds, providing
drug enforcement to a number of participating agencies primarily in Bexar and Comal
counties.
2.   It is immaterial whether the search is characterized as an inventory search (as
Officer Sanders testified) or as a search incident to arrest (as characterized in the State's
brief). The State does not have the burden of articulating every possible basis for holding
a search legal. Sullivan v. State, 564 S.W.2d 698, 704 (Tex. Crim. App. 1978) (on
rehearing); accord Lewis v. State, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984). A trial
court's decision on issues of evidence suppression will be sustained if the decision is correct
on any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990).
3.   In Holt, the Court of Criminal Appeals held that Sitz requires that DWI roadblocks must
be authorized by a statewide policy emanating from a politically accountable governing body. 
Holt, No. 599-93, slip op. at 5. Such roadblocks are unconstitutional under the Fourth
Amendment until "a politically accountable governing body sees fit to enact constitutional
guidelines regarding such roadblocks." Id.
4.   In the statement of facts portion of his brief, appellant states that he was in the
"checkpoint zone." However, appellant does not cite any state or federal authority to
support the concept that a checkpoint has a penumbra extending beyond the actual
checkpoint itself. We decline to create such an expansion.
5.   See Tex. Rev. Civ. Stat. Ann. art. 6701d, § 68 (West 1977) (requiring signalling before
lane change); Tex. Rev. Civ. Stat. Ann. art. 6701d, §§ 54A(a), 55(b) (West Supp. 1995)
(limiting operation of a motor vehicle on the shoulder). 
6.   Tex. Penal Code Ann. § 38.04 (West 1994).
7.   Tex. Rev. Civ. Stat. Ann. art. 6701d, § 186 (West Supp. 1995).
8.   Tex. Rev. Civ. Stat. Ann. art. 6701d, § 166(a) (West Supp. 1995).