**Thomas WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 921–83.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Rehearing Denied July 3, 1985.

---

Charles Campion, Don W. King, Jr., San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty. and Cathleen R. Reidel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of the offense of burglary of a habitation in violation of V.T.C.A. Penal Code, Sec. 30.01. After returning a finding of guilty, the jury assessed his punishment at forty years confinement in the Texas Department of Corrections. On appeal, the appellant complained that the trial court erred in admitting the fruits of a search of the trunk of the borrowed automobile that he had. The Second Court of Appeals sitting in Fort Worth affirmed appellant's conviction holding that appellant had no reasonable expectation of privacy in the automobile and thus had no standing to contest the search of the automobile. We granted appellant's petition for discretionary review to determine the correctness of that holding in light of the fact that the State raised the issue of standing[1] for the first time on appeal. We reverse the judgment of the Court of Appeals and remand the cause to that court for further consideration.

The appellant's complaint that the State was allowed to contest the issue of standing for the first time on appeal is met by the State's assertion of this court's holding in *Sullivan v. State*, 564 S.W.2d 698 (Tex. Cr.App.1978). The State is correct in stating that *Sullivan* holds that the State may raise the issue of appellant's standing to challenge a search for the first time at the appellate level. *Sullivan* is our only previous case to do so, however, and its holding merits discussion, not mere assertion, in its application to this case.

---

1. We note that under federal law "standing" is now a substantive rather than a procedural question which turns on whether one has a "legitimate expectation of privacy" in the place to be searched. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *U.S. v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

*Sullivan,* while announcing its holding as a general rule, relied on four premises as justification. *First:* since the evidence showed that the defendant in that case denied any contact or connection with the car to be searched and was not observed in the car, then there was sufficient evidence adduced at trial to affirmatively show "[the defendant] could have entertained no reasonable expectation of privacy in the unclaimed automobile." *Second:* it would be absurd to hold that a search and seizure was illegal where the record before this Court and the evidence before the trial judge showed the defendant had no standing to challenge the search. *Third:* the State had not taken contradictory positions below, i.e., the State was not claiming that the defendant had sufficient possession of the automobile for purposes of conviction but did not have sufficient possession to confer standing to challenge the search (quoting from and citing *United States v. Colbert,* 474 F.2d 174 (5th Cir.1973) (en banc)). *Fourth:* a previous case holding that the State could not raise the issue of standing for the first time on appeal, *Maldonado v. State,* 528 S.W.2d 234, 238 (Tex. Cr.App.1975), was the only case found so holding and it cited no authority or precedent.

Taking these four premises in reverse order we find that the holding in *Maldonado,* supra, has been, since *Sullivan* was written, the holding in cases from no less than the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. In *Steagald v. U.S.,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), Justice Marshall, writing for a unanimous (on this point) United States Supreme Court said that,

> "The Government, however, may lose its right to raise factual issues of this sort [reasonable expectation of privacy] before this Court [1] when it has made contrary assertions in the courts below, [2] when it has acquiesced in contrary findings by those courts, [3] **or when it has failed to raise such questions in a timely fashion during litigation.**" *Id.*

at 209, 101 S.Ct. at 1646. (emphasis and brackets added).

The Fifth Circuit in *U.S. v. Sanchez,* 689 F.2d 508 (5th Cir.1982), cited *Steagald,* supra, with approval in holding that a challenge to standing must be raised below or the reviewing court will assume the appellant has standing. The Fifth Circuit then, without further discussion, went on to forbid the government to do exactly what the State seeks to do in this case—raise a challenge to standing for the first time at the appellate level.

Turning to the third proposition in *Sullivan* we find that it is quite in harmony with *Steagald.* The State should not be allowed to challenge standing for the first time on appeal if that challenge is inconsistent with its position in the court below. The reason is that to allow such a procedure would deny the defendant the opportunity to present evidence of standing since the defendant would have been led, by the State's position below, to believe that the State was not challenging his standing or had acquiesced to his standing (appellant in his brief at bar refers to such a procedure as "sandbagging").

Similarly the second and first propositions of *Sullivan* are logical and in harmony with *Steagald* in any case where the affirmative evidence clearly shows a lack of standing on the part of the defendant. He is thereby put on notice that standing is an issue in the case just as surely as if the State had verbalized the issue. In a case where evidence doesn't affirmatively show lack of standing then a defendant is not similarly put on notice to produce evidence of standing. *Sullivan's* holding should not be read to apply to the latter situation since to do so would, in the words of the dissent in *Sullivan,* "deprive him of due process of law".

Having thus examined *Sullivan* in light of the afore-discussed federal cases, we find that *Maldonado* should only be overruled to the extent that it is in conflict with *Steagald.* We therefore hold that *Sullivan* is to be applied narrowly and that its application is limited to only those situa-

tions where the "absurd" result feared in *Sullivan* would occur.

We now review the facts of the case at bar in order to see if the State will be allowed to raise, for the first time on appeal, the issue of appellant's standing to challenge the search of the trunk of his borrowed automobile.

The record reflects that the San Antonio police dispatched a unit pursuant to a report of a burglary in progress. Upon his arrival, the responding police officer discovered appellant at the backdoor of a house, with the screen door open. After appellant was apprehended and searched for weapons, he told the officers that he had some identification in his vehicle, whereupon one of the officers searched an automobile parked in front of the house. He then informed police the car belonged to a friend. A search of the vehicle's interior turned up no identification, whereupon appellant replied that he did have some "in the vehicle." The officer took the car keys which were retrieved during the earlier patdown search of appellant, and opened the trunk of the car to look for identification. Found in the trunk was a sewing machine, television set, license plate, and a pair of cowboy boots. The boots, sewing machine, and television were later identified as items taken in the burglary of a residence that was in close proximity to the site of appellant's subsequent arrest.

Having thus examined these facts we find that the record is devoid of evidence that affirmatively showed that the appellant had no standing to challenge the search, i.e., that he had no reasonable expectation of privacy in the automobile or its trunk contents. There is no evidence that appellant stole the car. *Bodde v. State,* 568 S.W.2d 344 (Tex.Cr.App.1978); *Viduarri v. State,* 626 S.W.2d 749 (Tex.Cr.App. 1981). Appellant had the car keys and, significantly, never relinquished possessory

interest in the automobile. *Sullivan,* supra. There is no evidence that the car was taken from the owner without his consent.

There being no affirmative evidence that appellant lacked standing to contest the search of the borrowed automobile and its locked trunk, we find it unnecessary to determine whether the State assumed contradictory positions in the trial and appellate court.[2] The State has failed to raise the issue of standing in a timely manner in the trial court below and under the facts of this case we find that it is totally inappropriate to allow the State to raise, for the first time at the appellate level, the issue of appellant's standing to challenge the search.

The judgment of the court of appeals is reversed and the cause is remanded for consideration of appellant's Fourth Amendment claim.

ONION, P.J., dissents.

CLINTON, Judge, concurring.

If the notion of "standing" had not been conceived by an English common law judge, an American appellate court surely would have thought of it. The concept is to limit the work of the judiciary, and when applied to constitutional issues "the general principle [is] that a party will not be heard to claim a constitutional protection unless 'he belongs to the class for whose sake the constitutional protection is given.'" *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960).

On its face Article 38.23, V.A.C.C.P., commands:

"*No evidence* obtained by an officer or other person in violationa of [the Constitutions or laws of this State or of the United States] *shall be admitted in evidence against the accused* on the trial of any criminal case." [1]

---

2. Appellant asserts that the State at trial maintained this was a consent search situation and further urged that appellant had sufficient possession of the items found in the trunk of the automobile to justify his conviction.

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

That command is unconditional.[2]

The progenitor to Article 38.23 was enacted in 1925, and codified as Article 727a. C.C.P. 1925. Within two years the Court had conditioned implementation of the legislative mandate upon its belief that Texas courts "were required to make the same application of the principle involved [in the statute] as had theretofore been made by the Supreme Court of the United States, and by other jurisdictions in excluding evidence obtained in violation of *the constitutional provisions," Craft v. State,* 107 Tex.Cr.R. 130, 295 S.W. 617, 618 (1927).

Accordingly, one of the first limitations on implementation of the statutory prohibition was imposed by the Court in *Craft v. State,* supra. That restriction was taken from a treatise, Cornelius on Search and Seizure, the Court being satisfied that "the rule is concisely stated," *viz:*

> "The right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else." [3]

On rehearing the Court thought that the statute "was intended, and did have the effect, to change the rule adopted by this Court in *Welchek v. State,* 93 Tex.Cr.R. 271, 247 S.W. 524 [1922]." The Court then reasoned:

> "At the time the Welchek Case was decided it had never been held that one whose rights were not wrongfully invaded could successfully oppose the receipt of evidence of crime obtained through an unauthorized search. The contrary seems to have been the rule as indicated in the various cases cited in the original opinion, which ... made proper disposition of the appeal."

What the Court was actually saying is that by setting aside the *Welchek* "rule" admitting illegally obtained evidence, and

replacing it with a diametrically opposed rule excluding the same evidence, the Legislature expected Texas courts to condition application of its rule on a federal concept of "standing;" it stayed with that position in, e.g., *Allman v. State,* 107 Tex.Cr.R. 439, 296 S.W. 580 (1927) (relying on *Craft v. State,* supra) and *Jenkins v. State,* 108 Tex.Cr.R. 184, 299 S.W. 642 (1927), and of course still does. I say the Court was wrong then, and repetition of that error over the years does not make it right.

The tenor of the times in which the commands were originally enacted and the clear legislative intent in doing so were demonstrated in my concurring opinion in *Brown v. State,* 657 S.W.2d 797 (Tex.Cr. App.1983), and need not be iterated here. Suffice to say that prevailing search and seizure practices were found so odious that the Legislature determined to prevent them by enacting the predecessor to Article 38.-22, supra, as well as another that made it a penal offense to search without a warrant. The Court took a while to look into the legislative package, and then did not like what it found. See *Odenthal v. State,* 106 Tex.Cr.R. 1, 290 S.W. 743 (1927) and *Jackson v. State,* 107 Tex.Cr.R. 169, 295 S.W. 619 (1927).

The Legislature had found an emergency and an imperative public necessity in the fact that *"there has been used* against the citizens of this state *evidence obtained in violation of the Constitution* ... and that there is now no statute expressly *forbidding the same."* On that finding, it insisted that such evidence *not "be admitted* in evidence against the accused." The intendment and effect was to bar the forbidden evidence from the courtroom. Unlike constitutional protections that must be claimed by the person who seeks their shelter, the statutory provisions implement a legisla-

---

2. The second paragraph was added in 1965. It provides that should the issue be submitted to a jury and the jury find evidence was unlawfully obtained, "the jury *shall disregard any such evidence* so obtained." Again, there is no condition or qualification of the accused attached to the command.

3. A number of federal cases said by the Court to support that statement are cited, and no doubt they do.

tive judgment to outlaw use of certain evidence against an accused.

The *Craft* Court fell into error when it tempered a legislatively promulgated rule excluding all evidence illegally obtained with a concept of "standing" to complain that the search for and seizure of that evidence was violative of constitutional protections. In following opinions the statement taken from Mr. Cornelius was reiterated by rote; see *McFarlan v. State,* 106 Tex.Cr.R. 384, 292 S.W. 885, 886 (1927); *Yeager v. State,* 106 Tex.Cr.R. 462, 294 S.W. 200, 201 (1927); *Purswell v. State,* 107 Tex.Cr.R. 121, 294 S.W. 1107 (1927). When the "soundness" of *Craft* came to be questioned, the Court responded, "We think a further discussion of the question there decided is uncalled for." *Laake v. State,* 108 Tex.Cr.R. 206, 299 S.W. 643 (1927).

I join the opinion of the Court and for additional reasons herein given, I concur in the judgment of the Court.

## OPINION ON STATE'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

A jury found appellant guilty of burglary of a habitation and assessed forty years. The Second court of Appeals (Fort Worth) affirmed in an unpublished opinion, holding, among other things, that appellant had no reasonable expectation of privacy in an automobile which the police searched, and thus had no standing to litigate the lawfulness of the search. *Wilson v. State,* No. 2–83–275–CR, delivered August 31, 1983. We granted appellant's petition for discretionary review to examine that holding.

Our opinion on original submission reexamined *Sullivan v. State,* 564 S.W.2d 698 (Tex.Cr.App.1978) (opinion on State's motion for rehearing), which held that the State may raise the issue of a defendant's standing to challenge a search for the first time on appeal. We concluded that, in light of its premises, *Sullivan* is to be applied only to those situations where the evidence shows that the defendant had no standing

to litigate the search. This conclusion effectively reinstated the rule of *Maldonado v. State,* 528 S.W.2d 234 (Tex.Cr.App.1975), that the State may not raise the issue of standing for the first time on appeal.

In its motion for rehearing, the State contends that our opinion misconstrues *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) and *United States v. Sanchez,* 689 F.2d 508 (5th Cir.1982), and that our holding shifts the burden of proof on the issue of standing from the defendant to the State.

In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court wrote:

"Had we accepted petitioners' request to allow persons other than those whose own Fourth Amendment rights were violated by a challenged search and seizure to suppress evidence obtained in the course of such police activity, it would be appropriate to retain *Jones'* [*Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ] use of standing in Fourth Amendment analysis. Under petitioners' target theory, a court could determine that a defendant had standing to invoke the exclusionary rule without having to inquire into the substantive question of whether the challenged search or seizure violated the Fourth Amendment rights of that particular defendant. However, having rejected petitioners' target theory and reaffirmed the principle that the 'rights assured by the Fourth Amendment are personal rights, [which] * * * may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure,' *Simmons v. United States,* 390 U.S. [377] at 389, 88 S.Ct. [967] at 974 [19 L.Ed.2d 1247 (1968) ], the question necessarily arises whether it serves any useful analytical purpose to consider this principle a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim. We can think of no decided cases from this Court that would have come out differently had we concluded, as we do now, that the type of standing re-

quirement discussed in *Jones* and reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of 'standing,' will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. *But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.* * * *

"It should be emphasized that nothing we say here casts the least doubt on cases which recognize that, as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties. But this Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.

"*Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it.* That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. We are under no illusion that by dispensing with the rubric of standing used in *Jones* we have rendered any simpler the determination of whether the proponent of a motion to suppress is entitled to contest the legality of a search and sei-

zure. But by frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder logical footing." [emphasis supplied].

*Rakas* makes it plain that the question of a defendant's reasonable expectation of privacy is an issue going to the merits of his Fourth Amendment claim. Moreover, the Court has consistently held that the defendant bears the burden of proving that he had a legitimate expectation of privacy in the premises searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, supra; *Simmons v. United States*, 390 U.S 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

In *Maldonado v. State*, supra, the State claimed, for the first time on appeal, that defendant lacked standing to challenge the search of a truck. This Court wrote:

"[Defendant's] standing was never contested in the proceedings below. The State raises the issue for the first time in its brief upon appeal. The State should not be heard to complain of an incomplete record when its failure to dispute appellant's standing is responsible for the deficiency."

Our opinion on original submission in the instant case states that "the holding in *Maldonado*, supra, has been ... the holding in cases from no less than the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit." We were referring to *Steagald v. United States*, supra, and to *United States v. Sanchez*, supra.

In *Sanchez*, the trial court granted defendant's pretrial motion to suppress, and the government appealed. In a footnote, the Fifth Circuit stated:

"On appeal, the government seeks to question defendant's 'standing' to complain of the stop and search. As the

government never raised any issue of standing below, we decline to consider its contentions in this regard and accordingly assume, as all parties did in the trial court, that defendant has sufficient standing." [citing *Steagald v. United States,* supra].

*Sanchez,* supra, at 509 n. 1.

*Sanchez* represents the rule sometimes followed in jurisdictions where the prosecution has the right of appeal from the trial court's rulings.

Where the prosecution loses on the motion to suppress and appeals from the trial court's ruling, some courts in such jurisdictions bar the prosecution from raising the issue of standing for the first time on appeal. See, e.g., *State v. Grundy,* 25 Wash. App. 411, 607 P.2d 1235 (1980); see also 3 W. LaFave, Search and Seizure, 1985 supp. Sec. 11.7 at 350 et seq.

LaFave offers a rationale for the rule. He states that when a prosecutor loses on the merits at the suppression hearing, he should be expected to put before the judge at that time any other basis upon which he was entitled to prevail. Hence the rule against the prosecution's raising the issue for the first time on appeal when it lost on the merits below. On the other hand, when the prosecution wins on the motion to suppress, the government "cannot be faulted for not insisting upon an inquiry into yet another basis upon which it might defeat the suppression motion." 3 W. LaFave, Ibid.

Thus the rationale of the *Sanchez* rule does not fit the procedure in our jurisdiction, where the State may not appeal the granting of defendant's suppression motion.

Moreover, the *Sanchez* rule is not followed by some courts in jurisdictions where its rationale does fit. For example, the Tenth Circuit, relying on *Rakas v. Illinois,* supra, has held that the government, having lost on the motion to suppress, nevertheless may raise the issue of standing for the first time on appeal. *United States v. Hansen,* 652 F.2d 1374 (10th Cir.1981).

In *Steagald,* supra, the government also won on the motion to suppress. The government did not raise standing in the district court or the Court of Appeals. Instead, the government had consistently asserted the facts to be such as would confer standing, even as late as its brief opposing the granting of certiorari. After the Court granted certiorari, the government raised standing for the first time in its brief on the merits, suggesting remand as the appropriate disposition. The Court declined to follow the suggested disposition, and wrote:

"When petitioner sought review in this Court, the Government could have filed a cross-petition for certiorari suggesting, as it does now, that the case be remanded to the District Court for further proceedings. Instead, the Government argued that further review was unnecessary. Finally, the Government in its opposition to certiorari expressly represented that the searched home was petitioner's residence.

"Thus, during the course of these proceedings the Government has directly sought to connect petitioner with the house, has acquiesced in statements by the courts below characterizing the search as one of petitioner's residence, and has made similar concessions of its own."

The Court concluded that the government "through its assertions, concessions, and acquiescence," had lost the right to challenge petitioner's claim that he possessed a legitimate expectation of privacy in the searched home.

*Steagald* does not stand for the proposition that the prosecution may not raise standing for the first time on appeal. *Steagald* shows, rather, that the prosecution may forfeit review of the issue "through its assertions, concessions, and acquiescence" in the course of the litigation.

■ In summary, *Steagald* and *Sanchez* do not form the basis for a general rule prohibiting the State from raising the issue of standing for the first time on appeal. The holding in *Maldonado* is not the holding in *Steagald* or *Sanchez.*

The analog nearest the instant case is *Combs v. United States,* 408 U.S. 224, 92

S.Ct. 2284, 33 L.Ed.2d 308 (1972) (per curiam). At issue in *Combs* was the validity of a search warrant. Defendant moved to suppress the fruits of a search made pursuant to the warrant. The district court denied the motion to suppress.

On defendant's appeal form his conviction, the government argued for the first time that defendant lacked standing to challenge the warrant's validity, because he had shown no privacy interest in the premises searched pursuant to the warrant. The Sixth Circuit accepted the government's argument and affirmed. 446 F.2d 515 (6th Cir.1971) (per curiam).

The Supreme Court wrote:

"In concluding that petitioner lacked such standing, the Court of Appeals noted, inter alia, that he had 'asserted no possessory or proprietary claim to the searched premises' during the course of the trial. * * * Clearly, however, petitioner's failure to make any such assertion, either at the trial or at the pretrial suppression hearing, may well be explained by the related failure of the Government to make nay challenge in the District court to petitioner's standing to raise his Fourth Amendment claim. In any event, the record now before us is virtually barren of the facts necessary to determine whether petitioner had [standing]. * * *

"Since there has not yet been any factual determination of whether petitioner had an interest in the searched premises that was protectible * * *, we vacate the judgment of the Court of Appeals and remand with directions that the case be sent back to the District Court for further proceedings consistent with this opinion."

As in the instant case, the prosecution won on the motion to suppress and raised standing on defendant's direct appeal. When defendant lost his appeal he sought further review in the Supreme Court. Instead of ruling that the government could not raise standing for the first time on appeal, the Court remanded for further factual development to allow a proper resolution of the issue.

We see no reason to deviate from the Supreme Court's treatment of the issue in *Combs*. *The Court's subsequent decision in Rakas v. Illinois, supra, emphasizes that a defendant's privacy interest in the premises searched is a substantive element of his Fourth Amendment claim, which it is his burden to establish. Rawlings v. Kentucky, supra.* The language of *Rakas* suggests that the Court would no longer view the absence of a challenge to a defendant's standing as a "failure" of the government's.

*Rakas v. Illinois*, supra, put defendants on notice that the privacy interest in the premises searched is an element of their Fourth Amendment claim, which they bear the burden of establishing. *Sullivan v. State*, supra, put defendants on notice that the State would be allowed to raise the issue of standing for the first time on appeal. Both these cases were decided in 1978. The suppression hearing in the instant case was held in June of 1982. Accordingly, following *Combs v. United States*, supra, we turn to the record for the facts necessary to determine whether appellant had standing.

The Court of Appeals states that "The record reflects that [appellant] was arrested in an automobile that did not belong to him." This statement is incorrect. Appellant was apprehended at the back door of a house at about 10:45 a.m. The car that the police searched was parked on the street in front of the house. Appellant told the police "he had some ID in his vehicle." A police officer obtained the keys to the vehicle from appellant. An officer used one of the keys to open the trunk of the car.

Appellant testified at the suppression hearing, but not at trial. Over objection by defense counsel, the prosecutor questioned appellant as follows:

"Q. Now, the person—whose car were you using?

"A. Michael Green.

"Q. And Michael Green is the registered owner of that Monte Carlo;[1] is that correct?

"A. Yes, sir, it's my understanding.

. . . . .

"Q. Okay. How did you come to be driving Michael Green's Monte Carlo that morning?
[objection; overruled]

"Q. How did you come about the car?
[objection; overruled]

" . . .

"Q. How did you come about having Michael Green's car?

"A. I borrowed it.

"Q. When did you borrow it from him?

"A. When I did—
[objection; overruled]

"A. I borrowed it from him early that morning.

"Q. About what time?
[objection; overruled]

"A. If I remember, 8:30 or 9:00 o'clock that morning, somewhere around there."

Michael Green did not testify at the suppression hearing. When the defense called him as a witness at trial, Green invoked his Fifth Amendment privilege not to incriminate himself and was excused by the trial court.

The Court of Appeals reasoned: "[Appellant] testified that Michael Green owned the automobile that was searched and that he had been in possession of it for only a couple of hours prior to his arrest. He has clearly failed to meet his burden of showing a reasonable expectation of privacy in the automobile and thus his standing to contest the search."

LaFave comments, "If the owner of a vehicle has turned it over to another person for some period of time, then surely this latter person has standing vis-a-vis the car

during the duration of the bailment." 3 W. LaFave, Search and Seizure, Sec. 11.3 at 576–577 (1978). Elsewhere he states, "Thus, it is the current view that a person driving a car with the owner's consent ... [has] standing to object to a search of that vehicle." Id. at 571.

*Maldonado v. State,* supra, was a prosecution for possession of marihuana. Defendant was alone and driving a truck when he was stopped at a roadblock. Defendant was arrested for operatiing a motor vehicle without a valid driver's license and failure to display vehicle registration receipts. Hours later, the police pried up plywood boards in the bed of the truck and discovered marihuana in a hidden compartment. On appeal, the State contended that defendant lacked standing to contest the legality of the search. This Court noted in dictum that "The record contains only hearsay testimony by several officers that appellant continually claimed that he had borrowed the truck from a friend. If true, this fact would suffice to give appellant a possessory interst in the truck and, thus, standing."

In the instant case, appellant took the stand and testified that he had borrowed the car from its owner, Michael Green. The State did not controvert the truth of this claim with evidence, e.g., that the car had been reported stolen (see *Hutchinson v. State,* 509 S.W.2d 598 (Tex.Cr.App. 1974)), or that the car was not registered to Michael Green. Although the State elicited from appellant his admission that he was convicted of a felony in 1977, the State did not argue that appellant's testimony on the issue of his privacy interest in the automobile was unworthy of belief.[2] That appellant had borrowed the car from its owner was not a disputed issue. Rather, the State and defense joined issue on whether the appellant had consented to the search and, if he had, what the scope of

---

1. The officer who searched the vehicle testified at the suppression hearing that he believed the car was a Monte Carlo.

2. The prosecution did argue: "We think that what [defense] counsel's argument boils down

to is a question of whether the Court is going to lend a greater credit to the testimony of the officer or to [appellant]" on the disputed issue of consent.

that consent was. The trial court did not state its reason for denying the motion to suppress.

The only evidence on the issue of standing supports appellant's claim of a reasonable expectation of privacy in the premises searched. The prosecutor satisfied appellant's burden of producing evidence on the issue when he cross-examined appellant.

 Nevertheless, can the trial court's denial of the motion to suppress be sustained on the ground that appellant failed to meet his burden of persuasion? As pointed out above, the parties joined issue on the question of appellant's consent to the search, and did not argue the standing issue to the trial court. Cf. *Sullivan v. State,* supra ("defense counsel argued ... that [defendant's] interest in the automobile was based on the fact that he had a key to the ignition on his key ring prior to the search") (opinion on original submission). A defendant may fail even to produce evidence on the issue of standing, or the correct interpretation of the evidence produced may be that it fails to establish standing. See *Lewis v. State,* 664 S.W.2d 345 (Tex.Cr.App.1984). The reviewing court may properly sustain the trial court's denial on the ground that the evidence failed to establish standing as a matter of law, even though the record does not reflect that the issue was ever considered by the parties or the trial court.

 In the instant case, the evidence satisfies appellant's burden of production on the issue of his reasonable expectation of privacy in the automobile. Nothing in the record warrants the conclusion that the trial court did not believe appellant's testimony on that issue. In such circumstances, we will not sustain the denial of the motion to suppress on the ground that appellant failed to meet his burden of persuasion on the issue of standing.

We hold that appellant established his reasonable expectation of privacy in the premises searched. The State's motion for rehearing is denied.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for consideration of appellant's claim of an unlawful search.

CLINTON, J., concurs in result for reasons stated in his concurring opinion on original submission.

TEAGUE and MILLER, JJ., concur in result for reasons stated in opinion on original submission.

WHITE, J., not participating.