IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-203-CR



THE STATE OF TEXAS,



 APPELLANT


vs.





JASON MICHAEL NOLAN,



 APPELLEE


 




NO. 3-90-204-CR



THE STATE OF TEXAS,



 APPELLANT


vs.





SCOTT WAYNE HOLLAND,



 APPELLEE


 




NO. 3-90-205-CR



THE STATE OF TEXAS,



 APPELLANT


vs.





BILL ARON DUNCAN,



 APPELLEE


 




NO. 3-90-206-CR



THE STATE OF TEXAS,



 APPELLANT


vs.





DONOVAN DUNN,



 APPELLEE


 



FROM THE COUNTY COURT OF LLANO COUNTY, 


NOS. 9068, 9071, 9072, & 9073, HONORABLE J. HOWARD COLEMAN, JUDGE


 





PER CURIAM

 The State appeals orders of the county court granting appellees' motions to suppress
evidence and to dismiss the prosecutions against them. Tex. Code Cr. P. Ann. art. 44.01 (Supp.
1991). The informations ordered dismissed accuse appellees of possessing less than two ounces
of marihuana.

 Appellees were arrested after a bag of marihuana was found in the glove
compartment of an automobile in which they were traveling. In their motions to suppress,
appellees urged that the initial stop of the car and the subsequent search of the glove compartment
were violations of state and federal constitutional prohibitions against unreasonable searches and
seizures. Following a hearing, the motions to suppress were granted. Subsequently, appellees
filed motions to dismiss on the ground that the evidence remaining after the suppression order is
insufficient to support a conviction. These motions were also granted. The State gave timely
notice of appeal from the orders of the trial court.

 On April 15, 1990, a Department of Public Safety trooper and three Llano County
sheriff's deputies set up a roadblock on Ranch Road 3404. One of the deputies was Curtis
Tisdale, the only witness to testify at the hearing on appellees' motions to suppress. According
to Tisdale, the roadblock was "a routine driver's license and insurance check" during which every
motor vehicle entering the checkpoint was stopped and an inquiry was made whether the driver
had an operator's license and proof of liability insurance. One of the cars stopped at the
roadblock was an Oldsmobile driven by appellee Bill Aron Duncan, and in which appellees Jason
Michael Nolan, Scott Wayne Holland, and Donovan Dunn were passengers. Tisdale testified that
the Oldsmobile was stopped solely for the purpose of checking for a driver's license and proof
of insurance.

 Tisdale asked to see Duncan's driver's license, and Duncan complied. Tisdale then
asked to see proof of liability insurance. Duncan asked Holland, who was the front seat
passenger, to "Hand me the insurance out of the glove box." Tisdale described what then
happened:


 A As I stated and explained a while ago, the driver asked the right front
passenger to hand him the insurance.


 He placed his left hand upon the dash with his thumb in front of the glove
compartment door, unlocked it by his hand and allowed it to only open by a few
inches.


 He had trouble getting his hand in there and he scrambled around in there
a little bit with his hand looking for it, and then he came out with it, and as soon
as his hand came out, he slammed it shut right quick.


 Q How was he acting at that point?


 A As if there was something in there he didn't want me to know about, and
being though as I was standing there and they had the rifle butt in the car and he
was acting that way, I felt that there was something in there such as a firearm.


 That's what I had in my mind is that they had another firearm in there.


 Q So you were concerned about a concealed weapon being in this glove
compartment?


 A Yes.



Tisdale had previously testified that as he watched Holland retrieve the insurance form, he saw
through the window a wooden rifle stock in the back seat of the car. This weapon proved to be
a pellet rifle. Tisdale also testified that the occupants of the car appeared to be unusually nervous.

 For "officer safety," Tisdale ordered appellees to exit the vehicle. Tisdale then
opened the glove compartment, in which he found not a weapon, but a small plastic bag of a
substance he believed was marihuana.

Standing


 Although it did not raise this issue below, the State now argues in its first point of
error that appellees lack standing to contest either the stop of the vehicle or the search of the glove
compartment. That is, the State urges that appellees failed to demonstrate that the stop and search
infringed on their personal and legitimate expectations of privacy. Rakas v. Illinois, 439 U.S. 128
(1978); Chapa v. State, 729 S.W.2d 723, 727 (Tex. Cr. App. 1987).

 In its most recent opinion speaking directly to the point, the Court of Criminal
Appeals held that the existence of a legitimate privacy interest is an element of the defendant's
constitutional claim which he has the burden of establishing, and that the absence of a challenge
to the defendant's standing by the State in the trial court does not preclude the State from raising
the issue on appeal. Wilson v. State, 692 S.W.2d 661, 669 (Tex. Cr. App. 1985) (opinion on
motion for rehearing). (1) Wilson, however, was an appeal by the defendant in which the point of
error challenged the overruling of a motion to suppress. The court in Wilson noted that a different
rationale might apply in appeals by the State from an order granting a motion to suppress. 692
S.W.2d at 667-68.

 The State is not before this Court in its accustomed role as appellee. Instead, the
State is the appellant and bears the burden of demonstrating that the trial court committed
reversible error. As a general rule, appellate courts will not consider errors, even those of
constitutional magnitude, not called to the trial court's attention. Aylor v. State, 727 S.W.2d 727,
730 (Tex. App. 1987, pet. ref'd). To preserve a complaint for appellate review, a party must
have presented to the trial court a timely request, objection, or motion, stating the specific
grounds for the ruling he desired the court to make. Tex. R. App. P. Ann. 52(a) (Pamph. 1990). 
Applying these rules to the causes before us, the State may not complain on appeal that appellees
lacked standing because the State did not present this contention to the trial court. The point of
error presents nothing for review.

 We emphasize that this is not a case in which there is uncontradicted affirmative
evidence establishing, as a matter of law, that appellees' lack standing. Different considerations
would apply if, for example, there were undisputed evidence that the car had been stolen by
appellees, Jackson v. State, 745 S.W.2d 4, 8 (Tex. Cr. App. 1988), or if appellees, at the
hearing, had disclaimed any interest in or connection to the car. Jimenez v. State, 750 S.W.2d
798, 804 (Tex. App. 1988, pet. ref'd). See Sullivan v. State, 564 S.W.2d 698, 704 (Tex. Cr.
App. 1978) (opinion on rehearing).

 The State's first point of error is overruled.

 Search and Seizure 


 In its second point of error, the State urges that the trial court erred in concluding
that appellees were the victims of an unlawful search or seizure. In their motions to suppress,
appellees challenged two separate acts by the police: (1) the stop of the automobile and detention
of its occupants pursuant to the driver's license checkpoint; and (2) the subsequent search of the
glove compartment. At the conclusion of the hearing, the court stated that it was not suppressing
the evidence "on the constitution" but "on the probable cause of the search." We understand this
to mean that the trial court did not base its order on a finding that the initial stop was unlawful,
but on a finding that the officer was not authorized to search the glove compartment following the
stop. Because we find no reversible error in the trial court's ruling with respect to the search, we
do not address the State's contention that the checkpoint stop was lawful. We will merely assume
that the initial stop was lawful for the purposes of this opinion.

 Having lawfully detained a suspect for the purpose of investigation, an officer may
conduct a limited search for weapons where it is reasonably warranted for his safety or the safety
of others. Terry v. Ohio, 392 U.S. 1 (1968). In Terry, the Supreme Court stressed the
investigating officer's need to protect himself in such circumstances:


 [W]here a police officer observes unusual conduct which leads him reasonably to
conclude in light of his experience that criminal activity may be afoot and that the
persons with whom he is dealing may be armed and presently dangerous, where
in the course of investigating this behavior he identifies himself as a policeman and
makes reasonable inquiries, and where nothing in the initial stages of the encounter
serves to dispel his reasonable fear for his own or others' safety, he is entitled for
the protection of himself and others in the area to conduct a carefully limited
search of the outer clothing of such persons in an attempt to discover weapons
which might be used to assault him.



392 U.S. at 30-31.

 Where officers have temporarily detained the driver of an automobile under Terry,
they may search those parts of the passenger compartment where a weapon may be hidden, if the
officers have a reasonable belief that the detainee is dangerous and may gain access to a weapon. 
Michigan v. Long, supra. The Supreme Court stated:


 Our past cases indicate then that protection of police and others can justify
protective searches when police have a reasonable belief that the suspect poses a
danger, that roadside encounters between police and suspects are especially
hazardous, and that danger may arise from the possible presence of weapons in the
area surrounding a suspect. These principles compel our conclusion that the search
of the passenger compartment of an automobile, limited to those areas in which a
weapon may be placed or hidden, is permissible if the police officer possessed a
reasonable belief based on "specific and articulable facts which, taken together
with the rational inferences from those facts, reasonably warrant" the officer in
believing that the suspect is dangerous and the suspect may gain immediate control
of weapons. See Terry, 392 U.S. at 21. "[T]he issue is whether a reasonably
prudent man in the circumstances would be warranted in the belief that his safety
or that of others was in danger." Id., at 27. If a suspect is "dangerous," he is no
less dangerous simply because he is not arrested. If, while conducting a legitimate
Terry search of the interior of the automobile, the officer should, as here, discover
contraband other than weapons, he clearly cannot be required to ignore the
contraband, and the Fourth Amendment does not require its suppression in such
circumstances.


463 U.S. at 1049-50 (footnote omitted).

 In the causes before us, the police did not stop and detain appellees based on any
reasonable suspicion that they were engaged in criminal activity. To the contrary, the stop of
appellees at the checkpoint was a "suspicionless seizure" for the limited purpose of enforcing the
driver's licensing and mandatory liability insurance laws. Higbie v. State, 780 S.W.2d 228, 236-37 (Tex. Cr. App. 1989). Moreover, Tisdale undertook what he described as his protective
search for weapons only after he had determined that Duncan had a valid driver's license and
proof of liability insurance. Further, Tisdale never testified that he believed that appellees were
dangerous.

 We do not hold that a Long-type weapons search can never be justified following
a stop at a license checkpoint. However, the conduct of such searches must be carefully
circumscribed if a license checkpoint is not to become an excuse for general searches of the
vehicles stopped. Meeks v. State, 692 S.W.2d 504, 508 (Tex. Cr. App. 1985).

 At a hearing on a motion to suppress evidence, the trial court is the sole judge of
the credibility of the witnesses and the weight to be given their testimony, and an appellate court
must defer to the trial court's findings of fact absent a clear abuse of discretion. State v. Carr,
774 S.W.2d 379 (Tex. App. 1989, no pet.). In the causes before us, the trial court has not been
shown to have abused its discretion by concluding that the officer did not have a reasonable basis
for believing that a search of the glove compartment of appellee's vehicle was required for his
safety or the safety of others. No other lawful basis for the warrantless search is urged by the
State or suggested by the evidence. We affirm the order of the county court granting appellees'
motions to suppress.

Dismissal of Prosecutions


 The county court was not authorized to dismiss these causes on appellees' motions. 
State v. Shelton, 802 S.W.2d 80 (Tex. App. 1990, pet. filed); State v. Gray, 801 S.W.2d 10
(Tex. App. 1990, no pet.). While the county court's orders suppressing evidence may have the
practical effect of making convictions in these causes impossible, it is for the prosecutor, as the
officer charged with the responsibility for preparing and prosecuting criminal suits, to decide
whether a prosecution is sustainable. The situation is analogous to that presented when an
appellate court reverses a conviction because a motion to suppress evidence should have been
granted. See Collins v. State, 602 S.W.2d 537 (Tex. Cr. App. 1980).

 The orders granting appellees' motions to suppress evidence are affirmed. The
orders granting appellees' motions to dismiss are reversed and the causes are remanded to the
county court.



[Before Chief Justice Carroll, Justices Jones and Smith]

Affirmed in part; reversed and remanded in part

Filed:  April 10, 1991

[Publish]
1. Wilson was the last in a series of opinions in which the Court of Criminal Appeals endeavored
to answer the question whether the State could raise standing for the first time on appeal, never
reaching the same answer twice. See Maldonado v. State, 528 S.W.2d 234 (Tex. Cr. App. 1975); 
Sullivan v. State, 564 S.W.2d 698, 704 (Tex. Cr. App. 1978) (opinion on rehearing). See also
Hernandez v. State, 762 S.W.2d 578 (Tex. Cr. App. 1988) (opinion dissenting to refusal of
discretionary review). More recently, the court has hinted that its opinion on this question may
change once again. See Goodwin v. State, 799 S.W.2d 719, 725 (Tex. Cr. App. 1990); Russell
v. State, 717 S.W.2d 7, 9 fn. 6 (Tex. Cr. App. 1986). None of the cases were appeals by the
State from orders suppressing evidence.