MORGAN V. STATE 







NO. 10-89-203-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          BILLY WAYNE MORGAN,
                                                                                            Appellant
          v.

          THE STATE OF TEXAS,
                                                                                            Appellee

* * * * * * * * * * * * *

 From the 54th Judicial District Court
McLennan County, Texas
Trial Court # 89-382-C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          Appellant Billy Wayne Morgan was indicted by a McLennan County Grand Jury for
Murder as a habitual criminal. He was tried before a jury, found guilty, and sentenced to life in
prison. Appellant complains that improper argument was used by the prosecutor while closing,
illegally obtained evidence was admitted at trial, evidence of extraneous offenses was admitted at
trial and the indictment upon which he was prosecuted was void. We will affirm.
          We will first consider whether the indictment was void because he was not accorded an
examining trial. Appellant was indicted on April 6, 1989. The record reveals no request for an
examining trial; nor was a motion to quash the indictment urged on this basis. With no request
in the record concerning an examining trial, Appellant has not preserved error.
          Further, the return of a true bill of indictment by the grand jury satisfies the principal
purpose and justification for an examining trial--that there is probable cause to believe the accused
committed the crime charged. See Whittington v. State, 781 S.W.2d 338, 341 (Tex.
App.—Houston [14th Dist.] 1989, pet ref'd). Appellant's point is overruled.
          Next, Appellant complains that the prosecutor commented on his failing to testify when the
prosecutor said:
[PROSECUTOR]:
                    . . . .
I call your attention to page Five of what I have marked as Page Five of the
Charge. That's where the defendant has elected not to testify. And we talked a lot about
that during jury selection. You must not take into consideration that he did not testify in
this case. And I ask you that you follow the Court's Charge in that regard. It is our
position that you don't even have to think about him not testifying. The evidence against
him is simply overwhelming.
[APPELLANT'S ATTORNEY]: Your Honor, we will object --
[PROSECUTOR]: We didn't --
[APPELLANT'S ATTORNEY]: -- to the comment on the failure to testify.
THE COURT: Overruled.
[PROSECUTOR]: We talk --
THE COURT: Let me say this: I instruct you that you will follow the
instruction of the Court as given to you in the Court's Charge, and specifically in
reference to [Appellant's] failure to testify.
The right against self-incrimination is afforded to all defendants in Texas by the state and federal
constitutions and article 38.08 of the Code of Criminal Procedure.


 Jones v. State, 693 S.W.2d
406, 407 (Tex. Crim. App. 1985). The prohibition against comment on a defendant's right against
self-incrimination is mandatory and is rarely cured by instruction. Id. The test is whether "the
offending language, when viewed from the jury's standpoint, must be manifestly intended or be
of such a character that the jury would necessarily and naturally take it as a comment on the
accused's failure to testify." Montoya v. State, 744 S.W.2d 15, 35 (Tex. Crim. App. 1987) (on
rehearing). However, it is not enough that the comment might be construed as an implied or
indirect allusion to the defendant's failure to testify. Id. When applying the above standard, "the
facts and circumstances of each case must be analyzed to determine whether the language used was
of such character." Id.
          The State's brief urges that the prosecutor's comment was made while he was giving a
paragraph by paragraph summary of the charge and, therefore, was permissible pursuant to
Bouchillon. See Bouchillon v. State, 540 S.W.2d 319, 322 (Tex. Crim .App. 1976). In
Bouchillon the prosecutor's comments were as follows:
[PROSECUTOR]: Now the law also instructs that the failure of the
defendants to testify should not be taken as a circumstance against him and, of
course, in this case they did not testify and you should follow this court's
instruction and you should not consider that as any evidence . . . 
Id. at 321. Bouchillon's defense counsel then objected that the jury argument was improper and
the court overruled his objection. Id. 
          The case at bar is similar; however, here the prosecutor made three direct comments on
Appellant not testifying. This conduct is more than just a paragraph by paragraph summary. 
Using the test set out above we must examine the comments to determine whether they were
manifestly intended to be of such a character that the jury would necessarily and naturally have
taken them as comment on the accused's failure to testify. The first mention of Appellant not
testifying does not fail the test, but to comment two more times in violation of a constitutional
right should not be tolerated. The continued references to Appellant not testifying had a
cumulative effect and were error. This is a very fine line but Bouchillon does not allow the
constitutional rights of defendants to be violated under the guise of discussing the charge. The
prosecutor's comments were improper and it was error for the trial court to overrule Appellant's
objection to such comments.
          The State also raises the issue of whether Appellant preserved the error for appellate
review since he did not object when the prosecutor first mentioned Appellant not testifying. An
objection must be timely and made at the first opportunity. See Tex. R. App. P. 52(a). The
comments did not become blatantly objectionable until the second or third time the prosecutor
made a comment on Appellant not testifying; therefore, Appellant did preserve the error by
making a timely objection. See id.
          However, when analyzed under Rule 81(b)(2) of the Texas Rules of Appellate Procedure,
we find beyond a reasonable doubt that the error did not contribute to the conviction or to the
punishment. See Tex. R. App. P. 81(b)(2). We overrule Appellant's point since the error of the
trial court was harmless.
          Appellant argues that the court erred in admitting evidence obtained by an illegal entry into
his apartment. The entry occurred when Officer Kuykendall entered Appellant's apartment to
arrest Angela McClendon who was going through and removing items from dresser drawers in
the back bedroom of the apartment. 
          The first issue we must address is whether Appellant has "standing." The State has for the
first time raised the issue on appeal and is allowed to do so under Wilson v. State. See Wilson v.
State, 692 S.W.2d 661, 669 (Tex. Crim. App. 1984) (on rehearing). Wilson also indicates
standing is not the issue, but that the issue is whether Appellant has carried his burden of proving
he had a legitimate expectation of privacy in the premises searched. Id. at 667. He must do so
in order to prevail on his Fourth Amendment claim. Id. at 669.
          Here, there is evidence that Appellant used the apartment searched as his private residence
in which he kept his belongings and personal effects. We cannot say, based upon the above
evidence, that he does not have a legitimate expectation of privacy in the premises. See Cruz v.
State, 764 S.W.2d 302, 304 (Tex. App.—Houston [1st Dist.] 1988, no pet.)
          We now consider the entry of Officer Kuykendall into the apartment to make a warrantless
arrest of Angela McClendon. In order for a warrantless arrest to be justified, the State has the
burden to prove the existence of probable cause at the time the arrest was made and the existence
of circumstances which made the procuring of a warrant impracticable. Smith v. State, 739
S.W.2d 848, 852 (Tex. Crim. App. 1987). Where an officer lacks probable cause to arrest, the
challenged arrest will not be upheld merely because the exigencies of the situation precluded the
officer from obtaining an arrest warrant. Id. "Probable cause for an arrest exists where, at that
moment, the facts and circumstances within the knowledge of the arresting officer and of which
he has reasonably trustworthy information would warrant a reasonable and prudent person in
believing that a particular person has committed or is committing a crime." Id. Probable cause
is necessary to arrest a person without a warrant and the standard is no less stringent than that
needed to obtain a warrant. Troncosa v. State, 670 S.W.2d 671, 676 (Tex. App.—San Antonio
1984, no pet.). Additionally, the totality-of-the-circumstances approach is equally applicable to
warrantless and warrant seizures of persons and property. Eisenhauer v. State, 754 S.W.2d 159,
164 (Tex. Crim. App. 1988). It should be noted that an inarticulable hunch or suspicion that the
accused is committing a crime is not sufficient. Livingston v. State, 739 S.W.2d 311, 326 (Tex.
Crim. App. 1987).
          Here, the arresting officer knew only that the victim was dead, that the victim when last
seen left with the Appellant and another male, and that the victim's body was found in a blanket
that the victim's brother identified as the one he had seen at Appellant's apartment two to three
weeks earlier. Further, he knew that the victim, Appellant, and Angela McClendon were
suspected of being involved in a "check-kiting" scheme. Immediately prior to the arrest, the
officer saw a black female unlock and enter Appellant's apartment, although he did not know that
she was Angela McClendon until after the arrest. He also observed Appellant enter his own
apartment and then exit carrying a television. He watched as Appellant walked to a gate, looked
around, and then returned to his apartment. After he set the television down in front of his door,
Appellant then proceeded to the rear of the building where a rental truck was located. 
          After a careful examination of Chapter 14 of the Code of Criminal Procedure concerning
warrantless arrests, we believe the State has failed to carry its burden of proving McClendon's
warrantless arrest fell within one of the statutory exceptions. See Tex. Code Crim. Proc. Ann.
art. 14.01 (Vernon 1977). Appellant's home was not a suspicious place, a conclusion which is
reinforced by the fact that the police did not go to Appellant's apartment until two days after
learning its location. See id. at art. 14.03(a)(1) (Vernon Supp. 1991). There was no surveillance
of the apartment except for the brief period that Officer Kuykendall observed Angela McClendon
immediately prior to entering the apartment and arresting her. There was no indication of further
violence. See id at art. 14.03(a)(2). Nor was there evidence of theft. See id. at art. 18.16. 
Although under article 14.04 of the Code of Criminal Procedure, Officer Kuykendall had proof
that a felony had been committed, he had no proof that Angela McClendon (nor for that matter
Appellant) was the offender. Because we find there was no probable cause to arrest Angela
McClendon, we do not reach the issue of whether it was impractical for the officer to obtain a
search warrant. See Smith, 739 S.W.2d at 852.
          Under these circumstances, Officer Kuykendall had no authority to enter Appellant's
apartment and arrest Angela McClendon. When an officer unlawfully intrudes into a
constitutionally protected area and thereafter discovers facts to establish probable cause, such as
the bloodstained sofa in this case, the evidence is illegally obtained and becomes "fruit of the
poisonous tree." See Payton v. New York, 455 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639
(1980); Wong Sun v. U.S., 371 U.S. 417, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); and Armstrong
v. State, 550 S.W.2d 25, 31 (Tex. Crim. App. 1977) (on rehearing).
          Officer Kuykendall had no probable cause to arrest Angela McClendon for the death of
Roderick Freeman and no statutory authority to arrest her without a warrant. Since Appellant's
home was a constitutionally protected area in which he had a reasonable expectation of privacy,
and since Officer Kuykendall entered without consent, without a warrant, and without any lawful
authority whatsoever, that which he observed while illegally in Appellant's apartment, and his
testimony concerning same, should have been suppressed. See Payton, 100 S. Ct. at 1378; Wong
Sun, 83 S. Ct. at 413; and Hill v. State, 692 S.W.2d 716, 722 (Tex. Crim. App. 1985).
          However, because the "tainted" evidence would have been discovered later when
Appellant's apartment was searched pursuant to a facially valid search warrant, the error is
harmless. The inventory from the later search revealed that the officers seized a couch pillow
containing blood stains, a glass table cover with blood splatters, and a bullet fragment lodged in
the couch. Since the "tainted" evidence was ultimately discovered using proper methods, the
"taint" on the evidence discovered by Officer Kuykendall in his illegal entry into the apartment
becomes harmless under the "ultimate or inevitable discovery" exception to the exclusionary rule. 
See Nix v. Williams, 104 S. Ct. 2501, 2509-10 (1984).
          Further, Appellant urges that the photograph of the bloodstained couch and testimony of
Officer Kuykendall about the couch bolstered the testimony of Angela McClendon and Ronnie
King that the shooting took place as they described. In addition to the evidence "ultimately
discovered" pursuant to the search warrant of Appellant's apartment, other physical evidence, such
as the green blanket in which the victim's charred body was found which had last been seen about
two weeks prior to the killing in Appellant's apartment and the evidence seized from the search
of Appellant's car (two gun boxes, gun clips, shell casings, bullets and a gasoline can),
corroborated the testimony of McClendon and King. After reviewing all the evidence, we
determine beyond a reasonable doubt that the failure to suppress the evidence obtained from the
Fourth Amendment violation, though flagrant and not to be encouraged, made no contribution in
Appellant's conviction or punishment. The point is overruled.
          Next, Appellant complains the court erred in failing to suppress evidence obtained as a
result of search warrants for Appellant's apartment and car because the warrants were too general. 
Both warrants were evidentiary search warrants authorized under article 18.02, Texas Code of
Criminal Procedure. Both search warrants quoted the statutory language of article 18.02(10),
describing the property to be seized as "property or items, except the personal writings of the
accused, constituting evidence of the offense of murder or constituting evidence tending to show
that a particular person committed the offense of murder . . . " Appellant relies on article 18.01,
Texas Code of Criminal Procedure, for the premise that the property to be seized must be
"specifically described." He further contends that "general, exploratory rummaging in a person's
belongings" is prohibited. See Anderson v. Maryland, 96 S. Ct. 2737, 427 U.S. 463, 49 L. Ed.
2d 627 (1976); and Gonzales v. State, 477 S.W.2d 226 (Tex. Crim. App. 1979). Here, the
officers conducted good faith searches of Appellant's apartment and car and discovered several
incriminating items, including gun boxes, gun clips, shell casings, and bullets. Obviously, there
was a reasonable basis for the officers drawing a connection or "nexus" between these items and
the murder being investigated. In Bower v. State, 769 S.W.2d 887, 906 (Tex. Crim. App. 1989),
cert. denied, 109 S. Ct. 3266, the defendant complained about the seizure of a number of items
not specifically listed in a search warrant issued pursuant to articles 18.01 and 18.02. The court
held:
An officer may seize evidence of a crime even though such property is not
particularly described in the search warrant when the objects discovered and seized
are reasonably related to the offense in question, when the officer at the time of the
seizure has a reasonable basis for drawing a connection between the observed
objects and the crime which furnished the basis for the search warrant, and the
discovery of such property is made in the course of a good faith search conducted
within the perimeters of the search warrant. 
Id. Even though the gun boxes, gun clips, shell casings, and bullets were not specifically
described in the search warrants, there was a nexus between this evidence and the murder being
investigated and, therefore, the seizure of this evidence was not in violation of Appellant's
constitutional rights. The points are overruled.
          In his final point, Appellant contends the court erred in failing to grant a mistrial after the
State introduced evidence of extraneous offenses involving a firearm. The evidence indicates that
on the night of the killing Appellant had displayed the pistol that he ultimately used to shoot the
victim in the chest and face and another weapon described as a "black gun." Angela McClendon
and Ronnie King testified that Appellant purchased the weapons in Athens sometime prior to the
killing. Further, the evidence never indicated that Appellant carried the weapons illegally. 
During the State's questioning of Ronnie King, Appellant complains of the following testimony
concerning the "guns":
Q.Ronnie, on the night of March the 4th when ya'll went out to those two
clubs, did this defendant carry either one of these guns with him when ya'll
left that apartment?
          A.      Yes.
[DEFENSE COUNSEL]: Objection, Your Honor. Extraneous offense.
          THE COURT: Sustained.
          Defense counsel then requested and the Court gave an instruction to the jury to disregard
the above testimony for any purpose. Defense counsel's motion for mistrial was overruled, after
which there was a bench conference where the State's counsel urged that the testimony concerning
the guns was admissible as part of the "context of the offense that [night]" and that it went to show
the "state of mind" of Appellant just prior to the killing. The court ultimately ruled the testimony
was admissible, apparently adopted the State's argument, though no reason was given by the court. 
After receiving a favorable ruling from the court, the State abandoned its effort to elicit further
testimony concerning Appellant's display of the guns prior to the killing. The recent case,
Montgomery v. State, Nos. 1090-88 & 1-91-88, slip op. at 4, 5-6 (Tex. Crim. App. June 19,
1991), interpreting Texas Rules of Criminal Evidence 403 and 404(b), makes a significant change
in the presumption that an extraneous offense is inadmissible because its prejudicial effect
outweighs its probative value. Interpreting Rule 403, the court stated that:
 Rule 403 has "shifted the focus somewhat from the test enunciated in Williams,
supra, and its progeny. The approach under Rule 403 is to admit relevant evidence
unless the probative value of that relevant evidence is substantially outweighed by
the danger of unfair prejudice to a defendant."
Crank v. State, 761 S.W.2d 328 at 342, n. 5 (Tex. Crim. App. 1988); and Williams v. State, 662
S.W.2d 344 (Tex. Crim. App. 1983) (emphasis is original). 
          Once the court rules that the evidence has relevance, further objection is now required
under Rule 403 to raise unfair prejudice. Id. at 4. Here, no further objection was raised by
Appellant concerning unfair prejudice of the "guns" testimony, and any error concerning the
prejudicial effect of the testimony is waived. This point is overruled. 
          The judgment is affirmed. 
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed July 25, 1991 
Publish