**Charles Robert VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00033–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1994.

Rehearing Overruled Jan. 26, 1995.

Discretionary Review Refused
May 17, 1995.

Herb H. Ritchie, Greg Glass, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Tommy Lafon, Houston, for appellee.

Before HEDGES, COHEN and WILSON, JJ.

## OPINION

HEDGES, Justice.

After the trial court denied his motion to suppress, appellant Charles Robert Villarreal pled guilty to the felony offenses of possession of marihuana and possession of a controlled substance with intent to deliver. The trial court assessed punishment at eight-years confinement. Appellant contends that the trial court erred in overruling his motion to suppress because his arrest violated rights guaranteed by the United States and the Texas constitutions. We affirm.

### Facts

On November 20, 1992, Officer Walter Redman of the Houston police department received an anonymous phone call that three specifically described Hispanic men were going to sell a large quantity of marihuana to two specifically described white men at a particular residence in Houston sometime that night. Two of the sellers were identified as "Big John" and "Benny," and the two purchasers were identified as "George" and "Michael." The informant described the sellers' vehicle and stated that a third, unnamed seller of marihuana would be its driver.

The informant told Officer Redman that the two purchasers would be inside the residence with Rick Varner, the owner of the residence, and that there were weapons inside the residence. Officer Redman then confirmed that Mr. Varner lived at that residence and that he had a criminal record.

Officer Redman drove to the residence with Officer Gary Dora of the Houston police department and found that the informant's description of the residence was accurate. The vehicles parked in front matched the description given by the informant for the supposed purchasers' and sellers' vehicles. Having confirmed the information concerning location and description of vehicles, the officers left the area. They returned later that night and found that the sellers' vehicle was gone. It is normal practice for sellers of illegal drugs to arrive at the location of the transaction, leave, and then return with the illegal drugs for the actual exchange.

After midnight, the sellers' vehicle returned to the residence, and three men matching the description given by the informant got out of the vehicle. The officers were able to identify two of these men as "Big John" and "Benny." Appellant, the unnamed individual described by the informant, was the driver of the vehicle. Appellant and his two codefendants removed two bags and a box from the vehicle. The packaging appeared consistent with wrapping used to conceal a large amount of marihuana. Officer Redman stated that, at that time of night, it would have taken two to four hours to obtain a warrant.

The officers got out of their patrol cars and approached the residence in order to investigate their suspicions. The officers identified themselves and told the three men to stop, but the men hurried into the residence. Mr. Balli (Big John) locked and blocked the front door with his body as Officer Redman identified himself and the other officer as police. Mr. Varner attempted to jump out of one of the windows at the side of the house, but he retreated when he saw the officers. The officers knocked on the door but were denied entrance. Fearing destruction of contraband and mindful of their own safety as well as the safety of individuals inside the residence, the officers broke through the door and entered the residence. The officers testified that it is common for weapons to be involved in illegal drug transactions.

Inside the residence, the officers detected a strong odor of marihuana and observed several packages of marihuana in plain view. A narcotics detection dog also made a positive alert for marihuana. Inside the residence were appellant and codefendants Balli, Covarrubia, Varner, George J. Jacob and Michael Ray Marlott.

Mr. Varner's wife arrived during the investigation, and Officer Redman obtained her written consent for a search of the residence.

A search of the residence revealed several weapons, some in plain view, and more than $59,000 in cash, some of which was also in plain view. Mrs. Varner told the officers that the large amount of cash did not belong to her and her husband.

Appellant told Officer Redman that he was the owner of the vehicle he had driven to the residence. Appellant then consented to a search of the vehicle, which revealed more marihuana as well as drug paraphernalia, cocaine, and a cellular phone.

## Motion to Suppress

In four points of error, appellant argues that the trial court erred in overruling his motion to suppress evidence of the marijuana and cocaine because his arrest and the subsequent seizure of contraband violated his rights guaranteed by the U.S. Const. amend. IV; Tex. Const. art. I, § 9; and Tex.Code Crim.P.Ann. art. 14.01. (Vernon 1977 & Supp.1994).

Appellant contends that he has standing to challenge the officers' entry of the Varner residence and the attendant search and seizure of the evidence because he was an invited guest. In order to achieve standing to mount this challenge, appellant must prove that he had a legitimate expectation of privacy in the premises searched. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App. 1988); *Wilson v. State,* 692 S.W.2d 661, 669 (Tex.Crim.App.1984).

■ Standing is an individual's right to complain about an allegedly illegal governmental search, and thus to exclude evidence. To have standing to complain about the legality of a governmental search, a person must show that he personally had a reasonable expectation of privacy. *United States v. Jacobsen,* 466 U.S. 109, 121–22, 104 S.Ct. 1652, 1661–62, 80 L.Ed.2d 85 (1984); *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Salvucci,* 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

Rick Varner testified at the suppression hearing as follows: appellant was an invited guest in the Varner residence. He was not residing or staying overnight at the Varner home. He was, however, "welcome to stay if he wanted to." Appellant had not stored any personal property in the Varner residence, nor was there any agreement for him to do so.

The court of criminal appeals has held that a guest in a hotel room rented by another does not have a reasonable expectation of privacy in that room. *Clapp v. State,* 639 S.W.2d 949, 953 (Tex.Crim.App.1982).

■ An individual who has no possessory or proprietary interest in the premises, but is a guest, has no clothes in the house, or other belongings, has no legitimate privacy interest in the premises searched. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App. 1988). Additionally, an individual has no valid expectation of privacy in a home where he is simply a guest and does not control entrances or exits from the premises. *Black v. State,* 776 S.W.2d 700, 701 (Tex.App.—Dallas 1989, pet. ref'd).

■ We have found no precedent that would impute an expectation of privacy for the purposes of standing to an invited guest who is not an overnight guest. We recognize that *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990) found that an overnight guest had a legitimate expectation of privacy in the residence in which he spent the night. *United States v. Wilson,* 36 F.3d 1298, 1302 (5th Cir.) We decline to extend this expectation to the more casual visitor such as appellant.

Finding that appellant did not have standing to challenge the search of the Varners' residence, we overrule appellant's four points of error.

We affirm the judgment of the trial court.

WILSON, J., dissenting.

WILSON, Justice, dissenting.

I respectfully dissent based upon the holding of the United States Supreme Court in *Minnesota v. Olson,* 495 U.S. 91, 99, 110 S.Ct. 1684, 1689 (1990). I believe the distinction made by the majority between the overnight guest in *Olson* and what the majority

labels as the "casual visitor" in the Varner home in the case before us will not stand under *Olson's* guidance. Whether the appellant here would have stayed longer, and under the majority's terms, ceased to be a casual visitor, was determined by the conduct of the police, and not appellant. Here, the majority says it finds no precedent that would impute an expectation of privacy for the purposes of standing to an invited guest who is not an overnight guest. I would respectfully suggest that *Olson*, 110 S.Ct. at 1689, suggests otherwise.