Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00226-CR

Eddie **WILSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-3496
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                 Phylis J. Speedlin, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:    May 12, 2010

AFFIRMED

      A jury convicted Eddie Wilson of possession of a controlled substance, and assessed punishment at sixty-seven years confinement. On appeal, Wilson raises one issue, contending the trial court erred in refusing his request for a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure. We affirm the trial court's judgment.

### BACKGROUND

Marsha Hadaway regularly opens her house to those in need. Although she was the sole renter of her house, she allowed her cousin, Clifford McKnight, to stay with her while he was trying to get back on his feet. Some of her cousin's friends, including Wilson, came over one evening while she was at home, to play dominoes. At one point during the evening, Wilson, who had been playing dominoes with the other men, asked Hadaway if he could lie down in one of the bedrooms to go to sleep. Hadaway said "yes," and Wilson "went into the bedroom and laid down."

That same evening, officers from the Gang Unit of the San Antonio Police Department were working in the area of Hadaway's home. Detective Kevin Nogle testified there had been complaints about drugs, prostitution, and gangs in the area. Detective Nogle saw a known prostitute and drug addict, Nancy Martinez, leaving Hadaway's house. Detective Nogle testified officers had been to the house before for "narcotics complaints." He stated that during previous contacts Hadaway had told officers they could come over "anytime we wanted" because "she was tired of the problems being brought to her house." Detective Nogle said he spoke with Martinez and based on that conversation, he knocked on Hadaway's door. McKnight answered the door, and Detective Nogle asked to speak to Hadaway. Hadaway obviously heard Detective Nogle because she yelled, "Yeah, I'm here, I'm on the couch."

According to both Detective Nogle and Hadaway, Detective Nogle asked Hadaway if the officers could come into the house, and Hadaway agreed. Hadaway denied she was threatened in any way by the officers. She said she did not feel coerced into giving the officers permission to enter the house. After Detective Nogle and another officer entered the house, Detective Nogle explained they believed there might be drug dealing taking place in the house. Detective Nogle asked Hadaway

if there was anyone else in the house, and she told him there were "some in the back, and somebody's in the bedroom asleep." Hadaway testified she had no problem with the officers going through the house or into the bedroom. Detective Nogle and Hadaway both testified officers went to the back room of the house. One of the officers with Detective Nogle took everyone from the back room outside, to the front of the house. Detective Nogle testified that as he was walking back to the front of the house he noticed a closed door. He opened the door and shined his flashlight into the room. Detective Nogle saw someone lying on bed. Detective Nogle said, "Hey, it's the police," and he saw the individual moving around on the bed. He also saw what he believed to be a "bag of crack next to the guy's head." When Detective Nogle started to enter the room, the individual on the bed put the bag in his mouth. Detective Nogle and the individual struggled, but eventually, with the help of another officer, the individual was subdued, and the bag was retrieved. It was determined the bag contained drugs, and the individual, later identified as Wilson, was arrested.

Wilson was subsequently indicted for possession of a controlled substance with intent to deliver, and possession of a controlled substance. Wilson argued the evidence seized by the officers should be suppressed because under the Fourth Amendment he had a reasonable expectation of privacy while in Hadaway's bedroom, which the police violated. The trial court denied the motion to suppress, and denied Wilson an instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). The jury convicted Wilson of the lesser offense of possession.

## ANALYSIS

On appeal, Wilson contends the trial court erroneously denied his request for an article 38.23 instruction, contending the "vague and incomplete evidence of the scope of the homeowner's consent

to the search created a fact issue regarding the legality of the search," which thereby entitled him to the requested instruction. Article 38.23 provides that in any case where the evidence raises an issue as to whether evidence was seized in violation of state or federal law, the jury shall be instructed that if it believes beyond reasonable doubt that evidence was illegally seized it shall disregard such evidence. *Id*. Wilson acknowledges the outcome of this appeal turns on whether Hadaway gave consent to the search of her home and, more specifically, the bedroom where Wilson was sleeping. However, Wilson must first establish standing to raise a Fourth Amendment challenge, and a subsequent article 38.23 instruction based thereon. *See Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008); *see also* U.S. CONST. amend. IV; *Rakas v. Illinois*, 439 U.S. 128, 139 (1978).

### *Applicable Law*

The Fourth Amendment protects individuals "'against unreasonable searches and seizures.'" *Luna*, 268 S.W.3d at 603 (quoting *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007)). An individual's standing to assert a Fourth Amendment challenge, and entitlement to an article 38.23 jury instruction, is contingent on whether he has a legitimate expectation to privacy that society would deem reasonable. *See Rakas*, 439 U.S. at 143 n.12; *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008) (holding, in context of challenge to admission of another person's confession, that if defendant lacks standing to raise constitutional challenge, he is not entitled to article 38.23 instruction). The accused has the burden of proving the legitimacy of his expectation to privacy. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1992). To carry this burden, the accused must generally prove that by his conduct, he exhibited an actual subjective expectation of privacy, and that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id*. In determining whether the accused has met his burden,

the court should consider the totality of the circumstances, and may evaluate: (1) whether the individual had an actual, subjective expectation to privacy, (2) whether he was on the premises legitimately, (3) the degree of his control over the premises and whether he had the right to exclude other individuals, (4) whether he took normal precautions to ensure his privacy, (5) whether he put the premises to private use, and (6) whether his expectation was consistent with historical notions of privacy. *Id.* "Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *see Parker v. State*, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006).

An "overnight guest" has a legitimate expectation to privacy in the place where he spends the night. *Luna*, 268 S.W.3d at 603 (citing *Minnesota v. Olson*, 495 U.S. 91, 99 (1990)). However, "an overnight guest's expectation of privacy is controlled to a significant degree by the wishes of his host[,]" and a host may diminish the expectation of privacy by guests when the host permits police to search the premises. *Granados v. State*, 85 S.W.3d 217, 222–25 (Tex. Crim. App. 2002). Moreover, the legitimate privacy expectation of an overnight guest does not extend to a casual visitor or guest who is merely present with the consent of the homeowner. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998); *see Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988) (holding guest with no possessory or proprietary interest in premises, who has no clothes in house or other belongings, has no legitimate privacy interest in premises); *Black v. State*, 776 S.W.2d 700, 701 (Tex. App.—Dallas 1989, pet. ref'd) (holding individual has no valid expectation of privacy in home where he is simply guest and does not control entrances or exits); *Villarreal v. State*, 893 S.W.2d 559, 561 (Tex. App.—Houston [1st Dist.] 1994) (refusing to impute expectation of privacy for

standing purposes to invited guest who was not overnight guest), *aff'd*, 935 S.W.2d 134 (Tex. Crim. App. 1996). Mere presence at night does not establish "overnight guest" status. *See Taylor v. State*, 995 S.W.2d 279, 282 (Tex. App.—Texarkana 1999) (concluding appellant was not overnight guest, "[a]lthough he was indisputedly there at night."), *pet. dism'd as improvidently granted*, 55 S.W.3d 584 (Tex. Crim. App. 2001).

## APPLICATION OF LAW

Although the record undisputedly establishes Wilson was legitimately on the premises as an invited guest at night, Wilson did not establish he was an overnight guest as opposed to a casual guest or visitor who elected to nap while his friends continued to drink and play dominoes in the next room. The evidence shows Wilson only asked permission to lie down in a bedroom, which he did. Wilson most likely did have an actual, subjective expectation to privacy given that he went into the bedroom, closed the door, and apparently went to sleep, but the inquiry does not end there because a subjective expectation must be reasonable and consistent with societal norms. *Villarreal*, 935 S.W.2d at 137.

In *Villarreal*, the Court of Criminal Appeals refused to categorize the appellant as an overnight guest despite his actual, subjective expectation to privacy in his friend's house. *Villarreal*, 935 S.W.2d at 137. The court reasoned the appellant was not entitled to challenge the search of the premises because he had no proprietary or possessory interest in the premises, lacked control over entrances and exits, had no clothing or personal items stored there, and did not demonstrate intent to stay the night, despite an invitation to do so. *Id.* Similarly in this case, Wilson did not demonstrate any proprietary interest in the property, kept no personal items there, and provided no

evidence of any control over entrances or exits. And, it appears from the record Wilson was lying in bed with his clothes on.

Accordingly, we hold Wilson failed to meet the burden of proving he has standing to complain of the trial court's refusal of his article 38.23 instruction. However, even if we assume Wilson established his status as an overnight guest, the court of criminal appeals has held, as noted above, a host may limit a guest's expectation of privacy by giving law enforcement consent to search the premises. *Granados*, 85 S.W.3d at 224–25. This is in line with *Villarreal*'s requirement that the expectation be one society is ready to recognize as reasonable. 935 S.W.2d at 137. Because the overnight guest doctrine is rooted in societal custom, other customs must also be observed, such as the assumption of risk that the host might revoke a guest's status or invite the police in to search the house. *See Granados*, 85 S.W.3d at 224.

The evidence established that when police arrived they asked Hadaway if they could come inside. It is clear from her testimony that Hadaway gave officers permission to search the house, which included going into the back room and securing anyone found, as well as entering the bedroom where Wilson was found. Hadaway even testified she pointed out to police where everyone was located, stating, "I said some [are] in the back, and somebody's in the bedroom asleep." The following exchange also occurred between the State and Hadaway, conclusively establishing Hadaway's consent to search the bedroom where Detective Nogle found Wilson with the drugs:

> Q. [The State]: Okay. And during this entire time, **did you have any problem with what the police were doing; meaning, coming into the house, going to the back and securing people, going into the bedroom**?
>
> A. [Hadaway]: No, ma'am.
>
> Q. [The State]: Any of those things?

A. [Hadaway]:  No, ma'am.

Q. [The State]: Okay.  **Those things were done with your permission**?

A. [Hadaway]: **Yes, ma'am**.

(emphasis added)

Hadaway's testimony conclusively refutes Wilson's contention that evidence of Hadaway's consent was "vague and incomplete," which thereby entitled him to an article 38.23 instruction.  To the contrary, Hadaway's testimony was clear and complete–she granted the officers permission to search the bedroom.

### Conclusion

We hold Wilson failed to carry his burden to establish standing to raise a Fourth Amendment challenge, which might have entitled him to an instruction under article 38.23.  Even if he had met his burden, the evidence conclusively establishes Hadaway consented to a search of the house, including the bedroom where police found Wilson in possession of a controlled substance.  Accordingly, we overrule Wilson's sole point of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish