# NO. 12-09-00095-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JARROD TROY BARTON,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant Jarrod Troy Barton appeals his conviction for possession of a controlled substance, methamphetamine, in an amount of less than one gram. In two issues, Appellant contends that the trial court erred in failing to suppress certain evidence, and that the evidence is legally and factually insufficient to support his conviction. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of a controlled substance, methamphetamine, in an amount of less than one gram, including adulterants and dilutants.[1] The indictment also included two enhancement paragraphs, alleging that Appellant had been twice convicted of a felony prior to the commission of the charged offense. Appellant pleaded "not guilty." After the trial, the jury found Appellant guilty of possession of a controlled substance as charged in the indictment. Appellant elected to have punishment assessed by the trial court and

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 2010).

was sentenced to ten years of imprisonment.[2]   However, the trial court suspended imposition of the sentence and placed Appellant on community supervision for ten years.[3]   This appeal followed.

**MOTION TO SUPPRESS**

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress because the search conducted by the officers violated his rights under the Fourth Amendment to the United States Constitution.   The State contends that Appellant lacked standing to contest the search because he did not own the home or have any possessory right to it.

**Facts**

Before trial, Appellant moved to suppress any statements concerning the contraband seized from a mobile home by law enforcement until a hearing was held to determine its admissibility.   The trial court held a hearing on the motion. Sergeant Richard Fulton, a criminal investigator with the Texas Department of Public Safety, was the only person who testified at the hearing.   Fulton testified that, on the date of the search, he was conducting surveillance on a mobile home, attempting to locate Mickey Shane Hargett, a fugitive.   The front door of the home was "wide open" even though it was December, and a steady stream of men and women were coming in and out of the home.   Fulton knew that Hargett had a narcotics background and believed that the people coming in and out of the home were part of the drug element.   Someone matching Hargett's description appeared on the front porch. Fulton verified that the person on the front porch matched Hargett's description, requested backup from the Chandler Police Department, and arrested Hargett.   The front door of the mobile home was still open, and several men were in close proximity to the front door. According to Fulton, these men were in a direct line of contact or "firing."

---

[2] An offense under section 481.112(a) is a state jail felony.   TEX. HEALTH & SAFETY CODE ANN. § 481.112(b). Appellant pleaded true to the enhancement allegations that he had two prior felony convictions. Because the enhancement allegations were found to be true, Appellant was punished for a second degree felony. *See* TEX. PENAL CODE ANN. §12.42(a)(2) (Vernon Supp. 2009).   An individual adjudged guilty of a second degree felony shall be punished by imprisonment for any term of not more than twenty years or less than two years and, in addition, a fine not to exceed $10,000.  TEX. PENAL CODE ANN. §12.33 (Vernon Supp. 2009).

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a)  (Vernon Supp. 2009).

2

Two officers from the Chandler Police Department entered the mobile home to ascertain that no one in the immediate area had any weapons. Fulton checked the persons near the front door for weapons. He heard one of the officers ask why someone was hiding, sounding "spooked." Fulton looked to his left and noticed an adjoining bedroom that did not have a door. At that moment, a woman came out of the bedroom saying, "[I]t's okay," and that she was Jennifer Anderson. Fulton knew that Anderson was the "main" resident of the home, who paid the water bills. Another officer told Fulton that he could see needles on the bed in the bedroom. At that point, Fulton concluded that he needed consent to search the mobile home. He confronted Anderson who gave him consent to search. During the search, Fulton observed signs of narcotic activity in the bedroom, including baggies and needles. Fulton and the other officers decided to summon narcotics officers from the sheriff's department. When the narcotics officers arrived, Fulton took Hargett to jail. Later, Appellant was found hiding in a closet of the bedroom. He was arrested for possession of a controlled substance after contraband was found in that closet. After hearing argument of counsel, the trial court denied Appellant's motion to suppress.

## Applicable Law

The purpose of the Fourth Amendment "is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (quoting *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993)). An accused has standing to contest a search only if he had a legitimate expectation of privacy in the place invaded. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978); *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). The accused has the burden of proving facts establishing a legitimate expectation of privacy. *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988). The accused may carry his burden by proving that, by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979); *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. In other words, he must exhibit the measures he took to protect the privacy of the property in question. *See Pennywell v. State*, 84 S.W.3d 841, 844 (Tex. App.—Houston [1st Dist.] 2002), *pet. granted, remanded*, 125 S.W.3d 472 (Tex. Crim. App. 2003).

3

If he proves that he exhibited an actual subjective expectation of privacy, then he must prove that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580; *Parker v. State*, 182 S.W.3d 923, 926 (Tex. Crim. App. 2006); *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. Several factors are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. This list of factors is not exhaustive, however, and none is dispositive of a particular assertion of privacy. *Granados*, 85 S.W.3d at 223. Rather, we examine the circumstances surrounding the search in their totality. *Id.*

## Analysis

The evidence shows that Appellant was a guest in the mobile home who lacked any possessory or propriety interest in the premises. *See **Villareal v. State***, 893 S.W.2d 559, 561 (Tex. App.—Houston [1st Dist.] 1994), *aff'd*, 935 S.W.2d 134 (Tex. Crim. App. 1996). Appellant has no valid expectation of privacy in a home where he is simply a guest. *See id.* Moreover, he must exhibit the measures he took to protect the privacy of the property in question. *See **Pennywell***, 84 S.W.3d at 844. The evidence shows that the front door of the mobile home was "wide open" and that a steady stream of men and women were coming in and out of the home. There is no evidence that Appellant attempted to control the entrances and exits of the premises and, thus, protect the privacy of the premises. *See id.; **Villareal***, 893 S.W.2d at 561. Finally, Appellant was discovered hiding in a bedroom closet where the contraband was located. Based upon the totality of the circumstances, we cannot say that Appellant showed a genuine intention to preserve something as private or that he had taken measures to protect his privacy. *See **Granados***, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138; *Pennywell*, 84 S.W.3d at 844. From this evidence, Appellant failed to show that he had a subjective expectation of privacy. *See **Smith***, 442 U.S. at 740, 99 S. Ct. at 2580; *Granados*, 85 S.W.3d at 223; *Villarreal*,

935 S.W.2d at 138.

Even if Appellant had a subjective expectation of privacy, he must also prove that his subjective expectation was objectively reasonable. *See Smith*, 442 U.S. at 740, 99 S. Ct. at 2580; *Parker*, 182 S.W.3d at 926; *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. The evidence shows that Appellant may have been in the mobile home legitimately, but that he did not own the mobile home or have a property or proprietary interest in it. The front door of the mobile home was "wide open" and a steady stream of men and women were coming in and out of the home. There is no evidence Appellant controlled the premises or had the right to exclude others. Further, there is no evidence that he used the mobile home for some private use. Finally, we cannot say that hiding in a bedroom closet with contraband gives rise to a claim of privacy consistent with historical notions of privacy. From this evidence, Appellant failed to show that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *See Smith*, 442 U.S. at 740, 99 S. Ct. at 2580; *Parker*, 182 S.W.3d at 926; *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. Consequently, Appellant has no standing to contest the search because he did not prove facts showing that he had a legitimate expectation of privacy. *See Calloway*, 743 S.W.2d at 650.

However, even if he had standing to challenge the search, Appellant would not prevail. Appellant argues that the officers' "protective sweep" was illegal because there was no testimony at the hearing to justify the officers' entry into the mobile home. He contends that the State failed to show that the officers possessed a reasonable belief based on specific facts that the individuals inside the mobile home posed a threat. A "protective sweep" is a "quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000) (quoting *Maryland v. Buie*, 494 U.S. 325, 328, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)). When conducting an in-home arrest, a police officer may sweep the house only if he possesses an objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area. *See id.* at 817.

Here, a steady stream of men and women were coming in and out of the mobile home. Based on Hargett's narcotics background, Fulton believed that those persons were part of the drug element. Fulton stated that after he arrested Hargett, the front door of the mobile home was

still open, and that several men inside were in close proximity to the front door in a direct line of contact or "firing." Further, he stated that by arresting Hargett, he and the other officers were "becoming a spectacle." At that time, Fulton and the two other officers entered the home to check the persons inside for weapons. Because Fulton believed that the persons in close proximity to the front door of the mobile home represented the drug element and were in a direct line of contact or "firing" upon the officers, he showed an objectively reasonable belief that those persons posed a danger to him and the other officers. *See id*. Thus, even if Appellant had standing to contest the search, the "protective sweep" was not illegal.

Appellant's first issue is overruled.

## EVIDENTIARY SUFFICIENCY

In his second issue, Appellant argues that the evidence fails to show he exercised care, custody, control, or management of the methamphetamine and is, therefore, legally and factually insufficient to support his conviction. More specifically, he argues that the only link between him and the contraband were that they were both found in the closet. The State disagrees.

**Facts**

At trial, Fulton repeated the testimony he had given at the suppression hearing. Don Yarbrough, a detective assigned to the Henderson County Drug Enforcement Unit, testified that a search of the bedroom revealed rolling papers, small baggies containing a brown substance, some pipes or paraphernalia for marijuana, and a small amount of contraband. According to Yarbrough, Anderson handed him a slip of paper that stated someone else was in the home. Yarbrough "kind of motion[ed] for her where," and she nodded her head towards the bedroom. He stated further that, at that point, he and two other officers went to the closet in the bedroom where they discovered Appellant hiding in the corner of the closet behind a pile of clothing and a rod of hanging clothes. Yarbrough stated that Appellant had over $1,500 in cash in his wallet, but no contraband. Appellant told Yarbrough that he had just been paid by his employer. However, when Yarbrough checked with Appellant's employer, he discovered that Appellant had not worked in several weeks and that he had been paid approximately $400 for that work.

Joseph Lee Miller, another investigator with the Henderson County Drug Enforcement Unit, discovered a black zipper bag in one corner of the bedroom closet. Botie Hillhouse, an

6

investigator with the Henderson County Drug Enforcement Unit, testified that the bag contained coins, empty baggies, a set of digital scales, a baggie with some pills, a hypodermic needle, a spoon, and baggies containing suspected narcotics. A forensic scientist with the Texas Department of Public Safety at the Tyler Regional Crime Laboratory testified that the baggie had 0.66 gram of a substance containing methamphetamine, and the spoon had 0.02 gram of a substance containing methamphetamine.

**Standard of Review**

"Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction." *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed.2d 560 (1979)). The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence is viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour*, 8 S.W.3d at 671. The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). If a reviewing court finds the evidence legally insufficient to support a conviction, the result is an acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed.2d 652 (1982).

In conducting a factual sufficiency review of the evidence supporting the jury's verdict, we begin our review with the assumption that the evidence is legally sufficient under *Jackson*. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). Evidence that is legally sufficient, however, can be deemed factually insufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." *Id.* (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). In implementing this standard, we must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id.* Further, we may only find the evidence factually insufficient when necessary to "prevent manifest injustice." *Id.* (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Finally, we must explain why the evidence is too

weak to support the verdict or explain why the conflicting evidence greatly weighs against the verdict. *Id.*

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155 at 164 (Tex. Crim. App. 1997). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417. We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of the conflict. *See id.*

## Elements of the Offense

In this case, Appellant was convicted for possession of a controlled substance, methamphetamine, in the amount of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (b) (Vernon 2010). The elements of the offense are (1) a person (2) knowingly or intentionally (3) possesses (4) a controlled substance listed in Penalty Group I, which includes methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (Vernon 2010); *id*. § 481.112(a). To support a conviction for possession of a controlled substance, the state must prove (1) that the accused exercised care, control, or custody over the substance, and (2) that the accused was conscious of his connection with the substance and knew what it was. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The evidence may be direct or circumstantial. *Evans,* 202 S.W.3d at 162; *Brown*, 911 S.W.2d at 747. Regardless, the evidence must establish that "the accused's connection with the drug was more than just fortuitous." *See Brown*, 911 S.W.2d at 747.

The state may prove that a person "knowingly" possessed a controlled substance by introducing evidence that positively links the accused to the contraband. *See Brown*, 911 S.W.2d at 747. The nexus need not eliminate every other "outstanding reasonable hypothesis" except the accused's guilt. *Brown*, 911 S.W.2d at 748. If the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances

8

that link the accused to the contraband. ***Poindexter v. State***, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). This is not a legal rule, but simply a shorthand method of proving that the accused possessed the contraband knowingly or intentionally. ***Roberson v. State***, 80 S.W.3d 730, 735 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). The quantity of factors is less decisive than the reasonable impact of the factors in substantiating the elements of the offense. ***Gilbert v. State***, 874 S.W.2d 290, 298 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd); *see also* ***Wallace v. State***, 932 S.W.2d 519, 524 (Tex. App.–Tyler 1995, pet. ref'd).

Factors that may be considered in developing a link between the accused and the contraband are (1) whether the accused was observed in a suspicious place under suspicious circumstances; (2) whether the accused owned or had the right to possess the place where drugs were found; (3) whether there was contraband or drug paraphernalia present; (4) whether the conduct of the accused indicated a consciousness of guilt; (5) whether the location of the contraband was enclosed; (6) whether the accused was in proximity to the contraband; (7) whether the accused had accessibility to the narcotic; (8) whether the amount of contraband was large enough to indicate the accused knew of its existence; (9) whether the accused was found with a large amount of cash; and (10) whether the accused possessed other contraband or narcotics when arrested. ***Evans***, 202 S.W.3d at 162 n.12; ***Willis v. State***, 192 S.W.3d 585, 593 (Tex. App.—Tyler 2006, pet. ref'd); ***Villegas v. State***, 871 S.W.2d 894, 896-97 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

## Analysis

Because Appellant was not in exclusive possession of the mobile home where the contraband was found, we must determine whether there are additional independent facts and circumstances that link Appellant to the contraband. *See* ***Poindexter***, 153 S.W.3d at 406. The evidence shows that Appellant was in a mobile home with persons that Fulton believed indicated drug traffic and that he did not own or have the right to possess the place where the contraband was found. Further, contraband and drug paraphernalia were present in the bedroom and Appellant was found hiding in a closet in that bedroom. In hiding from the police, Appellant indicated a consciousness of guilt. Additional contraband and drug paraphernalia were in a bag in the closet where Appellant was found. Further, Appellant had $1,500 of unexplained cash on his person. These links between Appellant and the contraband establish that he knowingly and

9

intentionally possessed a controlled substance. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of possession of a controlled substance beyond a reasonable doubt.

Having determined that the evidence is legally sufficient to support the verdict, we address factual sufficiency. We must consider all of the evidence in a neutral light. *See Laster*, 275 S.W.2d at 518. In conducting our review, we note that Christopher Strawn, one of the men inside the mobile home, testified that Appellant did not have a bag with him when he arrived. However, Hargett testified to the contrary. Strawn also stated that Appellant was there to purchase a laptop from Hargett. Davelyn Barton, Appellant's mother, testified that she had given Appellant $1,000 that morning to buy Christmas presents, and that he had sold a car for approximately $1,200. However, in reviewing the entire record, we do not find that the evidence supporting the conviction is too weak to support the jury's verdict, or considering the conflicting evidence, that the jury's verdict is against the great weight and preponderance of the evidence. *See id*. Accordingly, Appellant's second issue is overruled.

## CONCLUSION

Based upon our review of the record, we conclude that the trial court did not err in denying Appellant's motion to suppress. Further, we hold that the evidence is both legally and factually sufficient to support the jury's verdict that Appellant was guilty of possession of a controlled substance, methamphetamine, in the amount of less than one gram. Accordingly, the judgment of the trial court is *affirmed*.

**BRIAN HOYLE**
Justice

Opinion delivered August 25, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)